******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ROBERT DOYLE *v.* UNIVERSAL UNDERWRITERS INSURANCE COMPANY
## (AC 39253)

Alvord, Prescott and Mihalakos, Js.

*Syllabus*

The plaintiff, who suffered injuries when his automobile collided with a vehicle driven by N, sought to recover damages for underinsured motorist benefits allegedly due under an automobile insurance policy that the defendant insurance company had issued to the plaintiff. At the time of the accident, N had an automobile insurance policy with a liability limit of $100,000. The plaintiff brought a negligence action against N, which was submitted to binding arbitration before an arbitrator, who found that the plaintiff had sustained fair, just and reasonable damages in the amount of $105,924. In accordance with that award, N's insurance company paid the plaintiff $100,000, which represented the limits of N's policy. The plaintiff thereafter brought this action against the defendant, alleging that because his actual damages resulting from the collision exceeded the $100,000 limit of N's liability coverage, which had been exhausted, he was entitled to recover the cost of certain medical care that he claimed he would incur in the future. The trial court granted the defendant's motion for summary judgment on the ground of collateral estoppel and rendered judgment thereon for the plaintiff in the amount of $5924, from which the plaintiff appealed to this court. He claimed that the trial court improperly rendered summary judgment because the doctrine of collateral estoppel did not bar him from relitigating the amount of damages that was awarded to him in the arbitration proceeding. *Held* that the trial court properly rendered summary judgment on the ground of collateral estoppel; the issue of the amount of damages to which the plaintiff was legally entitled was fully and fairly litigated, and actually and necessarily decided in the prior binding arbitration proceeding in which the plaintiff fully participated, and that issue was identical to the issue of damages in the form of underinsured motorist benefits sought in the present case, as the plaintiff conceded that the nature and extent of the damages he claimed against N in the arbitration proceeding were, in essence, the same as those he claimed against the defendant, and that the coverage under his insurance contract with the defendant was limited to the damages caused by N to the extent of the defendant's coverage, and no more.

Argued October 18—officially released December 26, 2017

*Procedural History*

Action to recover damages for underinsured motorist benefits allegedly due under a policy of automobile insurance issued by the defendant, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the court, *Vitale, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*David A. Zipfel*, for the appellant (plaintiff).

*Robert E. Koosa*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Robert Doyle, appeals from the summary judgment rendered by the trial court in his favor[1] in the amount of $5924 in this action to recover underinsured motorist benefits under an automobile insurance policy issued by the defendant, Universal Underwriters Insurance Company (Universal). The plaintiff suffered injuries in a collision between his automobile and that of an underinsured motorist, Neil Nilson. On appeal, the plaintiff claims that the court improperly determined that he was collaterally estopped from relitigating the amount of damages awarded to him in binding arbitration with Nilson. We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history.[2] On or about November 3, 2010, the plaintiff was involved in a multicar motor vehicle accident. On January 3, 2011, the plaintiff filed an action in Superior Court against Nilson, the driver of one of the other vehicles involved in the accident. In an amended complaint dated September 26, 2012, the plaintiff alleged that, as a result of Nilson's negligence, he suffered injuries, including, inter alia, a scapular fracture of the left shoulder, a left shoulder internal derangement, a rib fracture, a closed head injury, and nerve damage to his left arm, hand, and wrist. He further alleged that he had "incurred and will incur in the future, considerable expenses for hospital, doctor and medical care treatment, X rays, medicines and medical supplies, all to his financial detriment." In discovery, the plaintiff produced medical records and bills generated from medical treatment he sought with, inter alia, Dr. Andrew Caputo. The documents produced indicated that the plaintiff last consulted on or about March 22, 2011, with a medical provider for injuries sustained in the motor vehicle accident.

The plaintiff and Nilson agreed to submit the matter, including the issues of liability and damages, to binding arbitration and executed an arbitration agreement dated December 4, 2012. Under the terms of that agreement, the parties stipulated that the plaintiff's recovery from Nilson would be limited to a low of $0 and a high of $100,000, which number represented exhaustion of Nilson's automobile insurance policy limits. The parties agreed not to communicate the high-low parameters to the arbitrator.

On January 28, 2013, the arbitrator, Attorney Richard C. Tynan, held a hearing, during which the plaintiff presented evidence and testimony from witnesses regarding the "nature and extent of his damages—both economic and noneconomic." The plaintiff presented evidence that he might need future medical treatment, including surgery, as a result of the accident. The plain-

tiff did not refrain from presenting any evidence pertaining to his damages claim. On March 6, 2013, Attorney Tynan issued an award in which he found that the plaintiff had "sustained his burden of proving that he is entitled to fair, just and reasonable damages for those injuries he sustained through the negligence of the defendant, Neil Nilson." Attorney Tynan awarded the plaintiff the entirety of his claimed economic damages, $15,924, and noneconomic damages in the amount of $90,000, for a total award of $105,924. The parties executed a settlement and release agreement, and Nilson's insurance company paid the plaintiff $100,000, representing the limits of Nilson's policy.

The plaintiff thereafter filed the present action against Universal, his automobile insurance carrier, claiming that Nilson was underinsured at the time of the accident. In this action, the plaintiff again claims that he has suffered injuries as a result of Nilson's negligence and that he "has incurred and will incur in the future, considerable expenses for hospital, doctor and medical care treatment, X rays, medicines and medical supplies, all to his financial detriment." The nature and extent of the damages the plaintiff claims in the present action are "in essence, the same" as the nature and extent of the damages he claimed in his action against Nilson. The plaintiff did not elect to undergo surgery as a result of the accident, and he has not received any medical treatment or incurred any additional medical expenses since March 22, 2011. On December 1, 2015, Universal filed a motion for summary judgment on the ground of collateral estoppel, which the court granted; see footnote 1 of this opinion; on May 11, 2016. This appeal followed.

Before addressing the plaintiff's claim, we note the applicable standard of review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]he scope of our review of the trial court's decision to grant the [defendant's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Mierzejewski* v. *Brownell*, 152 Conn. App. 69, 78–79, 97 A.3d 61 (2014). Additionally, the applicability of the doctrine of collateral estoppel presents a question of law, over which this court's review is also plenary. *State* v. *Bacon*

*Construction Co.*, 160 Conn. App. 75, 85, 124 A.3d 941, cert. denied, 319 Conn. 953, 125 A.3d 532 (2015).

On appeal, the plaintiff claims that the trial court erred in granting summary judgment because it improperly concluded that the doctrine of collateral estoppel barred him from relitigating in this action against Universal the amount of damages awarded to him by Attorney Tynan in the prior arbitration proceeding. We disagree.

We first set forth the general applicable law of collateral estoppel. "[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." (Internal quotation marks omitted.) *Doran* v. *First Connecticut Capital, LLC*, 143 Conn. App. 318, 321, 70 A.3d 1081, cert. denied, 310 Conn. 917, 76 A.3d 632 (2013). "For collateral estoppel to apply, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding." (Internal quotation marks omitted.) *Pollansky* v. *Pollansky*, 162 Conn. App. 635, 651, 133 A.3d 167 (2016).

Under Connecticut law, mutuality of parties is not a prerequisite to the invocation of collateral estoppel. Id., 652–53; see also *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 299–303, 596 A.2d 414 (1991). Additionally, collateral estoppel "may be invoked offensively, in support of a party's affirmative claim against his opponent, or defensively, in opposition to his opponent's affirmative claim against him. . . . [Defensive collateral estoppel] occurs when a defendant in a second action seeks to prevent a plaintiff from relitigating an issue that the plaintiff had previously litigated in another action against the same defendant or a different party. . . . It is well established that privity is not required in the context of the defensive use of collateral estoppel . . . ."[3] (Internal quotation marks omitted.) *Girolametti* v. *Michael Horton Associates, Inc.*, 173 Conn. App. 630, 656, 164 A.3d 731, cert. granted on other grounds, 327 Conn. 963, 964, 965, 966,    A.3d (2017).

"[O]rdinarily a factual determination made in final and binding arbitration is entitled to preclusive effect." (Internal quotation marks omitted.) *Marques* v. *Allstate*

*Ins. Co.*, 140 Conn. App. 335, 340, 58 A.3d 393 (2013); see also *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 483, 628 A.2d 946 (1993).[4] Thus, a court properly may grant summary judgment on the ground that the plaintiff's claims are barred by the doctrine of collateral estoppel on the basis of a prior arbitration award. See, e.g., *Burton* v. *Stamford*, 127 Conn. App. 651, 653, 18 A.3d 590, cert. denied, 301 Conn. 915, 19 A.3d 1261 (2011).

We also briefly set forth the underinsured motorist statutory and regulatory scheme, pursuant to which "[a]n insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements . . . ." General Statutes § 38a-336 (b). "The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes [currently $20,000], except that the policy may provide for the reduction of limits to the extent that damages have been (A) paid by or on behalf of any person responsible for the injury . . . ." (Emphasis omitted; internal quotation marks omitted.) *Guarino* v. *Allstate Property & Casualty Ins. Co.*, 315 Conn. 249, 254–55, 105 A.3d 878 (2015); see also Regs., Conn. State Agencies § 38a-334-6 (d) (1) (A).

"[T]he purpose of underinsured motorist coverage is to protect the [insured] from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile. . . . Application of § 38a-336 involves two separate inquiries. First, it must be determined whether the tortfeasor's vehicle is an 'underinsured vehicle' within the meaning of the statute. Second, after this determination is made and underinsured motorist coverage is found to be applicable, the finder of fact calculates the amount of the award to be paid the victim." (Citation omitted; internal quotation marks omitted.) *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 84, 743 A.2d 156 (1999).

In the present case, the plaintiff fully and fairly litigated the amount of his damages during the arbitration proceeding. The issue of the plaintiff's damages was plainly raised in the pleadings and submitted to the arbitrator for determination. The plaintiff's amended complaint alleged that he suffered injuries as a result of Nilson's negligence and that he had incurred medical expenses and expected to incur future medical expenses. The arbitration agreement indicated that the parties were submitting to binding arbitration to resolve "the issues of liability and damages as the same were presented in the previously identified civil lawsuit." A review of the arbitrator's decision reveals that Attorney

Tynan reviewed, inter alia, the transcript of the plaintiff's deposition and the videotape of Dr. Caputo's deposition. He also heard the testimony of the plaintiff and others, and reviewed the medical bills submitted by the plaintiff. The plaintiff concedes that he did not refrain from presenting any evidence pertaining to his damages claim and that he presented evidence that he might need future medical treatment, including surgery, as a result of the accident. Moreover, the plaintiff has not received any medical treatment or incurred any additional medical expenses since March 22, 2011, which was long before the arbitration proceeding commenced.

The issue of the plaintiff's damages was likewise clearly determined in the arbitration. Attorney Tynan found that the plaintiff had sustained fair, just and reasonable damages in the amount of $105,924, which included the entirety of the plaintiff's claimed economic damages, $15,924, and noneconomic damages in the amount of $90,000. Moreover, the plaintiff concedes that the "nature and extent" of the damages claimed against Nilson are "in essence, the same" as those claimed against Universal in this action. The plaintiff further concedes that the "coverage in the parties' contract is limited to the damages caused by the tortfeasor (the carrier stands in the shoes of the tortfeasor to the extent of its coverage and no more) . . . ." Accordingly, the issues are identical for purposes of collateral estoppel.[5]

This court has previously held, under similar facts, that an injured party's underinsured motorist benefits claim was barred by the doctrine of collateral estoppel. *Marques* v. *Allstate Ins. Co.*, supra, 140 Conn. App. 342. In *Marques*, the plaintiff was injured in a motor vehicle accident and subsequently brought a negligence action against the driver of the other vehicle. Id., 337. The parties agreed to submit the matter to binding arbitration and executed a " 'confidential high/low award range arbitration agreement,' " which was not to be disclosed to the arbitrator. Id., 337 and n.2. After holding a hearing, the arbitrator found that the sum of $20,000 constituted " 'fair, just and reasonable compensation for the plaintiff's damages,' " which was equal to the limit of liability insurance coverage under the tortfeasor's automobile insurance policy. Id., 337–38. The defendant, who was both the tortfeasor's and the plaintiff's automobile insurance carrier, paid the plaintiff $20,000. Id. The plaintiff thereafter commenced an action against the defendant seeking underinsured motorist benefits under his automobile insurance policy, claiming that his actual damages exceeded the $20,000 limit of the tortfeasor's policy and that the tortfeasor's policy had been exhausted. Id., 338. The defendant filed a motion for summary judgment on the ground of collateral estoppel, which the court granted. Id.

This court affirmed the judgment of the trial court and held that "[b]ecause the issue of the plaintiff's total compensatory damages resulting from the collision 'was actually litigated and necessarily determined' . . . in the binding arbitration hearing in his prior action against [the tortfeasor], where the amount of such damages was found to be exactly $20,000—an amount precisely equal to, and thus not exceeding, the limit of liability coverage under [the tortfeasor's] automobile insurance policy—the defendant properly raised the doctrine of collateral estoppel defensively to prevent the plaintiff from relitigating that issue in this case." (Citation omitted.) Id., 341. The court further explained that because the amount of the plaintiff's total damages did not exceed the limit of the tortfeasor's policy, the tortfeasor was not an underinsured operator. Id., 341–42. Accordingly, the plaintiff was not entitled to recover underinsured motorist benefits from the defendant. Id., 342.

According to the plaintiff in the present case, *Marques* is inapplicable because it addresses *only* the doctrine of exhaustion.[6] The plaintiff emphasizes that the arbitration award in *Marques* did not exceed the limit of the tortfeasor's coverage and, thus, the plaintiff could not satisfy the condition precedent to an underinsured motorist benefits claim. Recognizing that *Marques* involved a determination that the tortfeasor was not underinsured based on the amount of damages awarded by the arbitrator, we nevertheless find its discussion of collateral estoppel relevant to the present case. Here, as in *Marques*, the issue raised—the amount of damages to which the plaintiff was legally entitled— had been "actually litigated and necessarily determined" in the binding arbitration hearing. Accordingly, collateral estoppel bars the plaintiff, as it did in *Marques*, from relitigating that issue.[7]

Moreover, although our appellate courts are not bound to follow the decisions of the trial court, we find instructive the well reasoned Superior Court decisions, which have concluded that collateral estoppel bars relitigation of damages in an underinsured motorist action where a previous arbitration award has exceeded the limit of the tortfeasor's coverage. As the trial court in the present action noted, courts faced with such claims have rendered summary judgment in the plaintiff's favor, awarded the difference between the arbitration award and the amount of the tortfeasor's coverage as damages, and otherwise collaterally estopped further action. See, e.g., *Zhuta* v. *Brewer*, Superior Court, judicial district of Waterbury, Docket No. UWYCV-12-6013992 (December 17, 2014) (*Zemetis, J.*) (59 Conn. L. Rptr. 497) (granting summary judgment after concluding that arbitrator's determination of damages in action against underinsured tortfeasor had preclusive effect in action by injured party seeking underinsured

motorist benefits from his insurer, entering judgment for plaintiff in the amount of difference between arbitrator's award and amount of the underinsured's coverage); see also *Siwek* v. *Metropolitan Property & Casualty Ins. Co.*, Superior Court, judicial district of New Haven, Docket No. CV-11-6017752 (February 22, 2012) (*Blue, J.*) (53 Conn. L. Rptr. 501) (same); *Dressel* v. *Travelers Property & Casualty Co.*, Superior Court, judicial district of Waterbury, Docket No. CV-08-5009763S (June 30, 2009) (*Brunetti, J.*) (same).[8]

We conclude that the court properly rendered summary judgment on the ground that the plaintiff is collaterally estopped from relitigating the issue of the amount of damages he sustained as a result of the motor vehicle accident.[9] The issue of the amount of the plaintiff's fair, just and reasonable damages was actually and necessarily decided in the prior voluntary and binding arbitration proceeding in which the plaintiff fully participated, and is identical to the issue of damages in the form of underinsured motorist benefits sought in the present action.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the defendant, Universal Underwriters Insurance Company, moved for summary judgment, it acknowledged in its motion that it was responsible for a monetary sum due the plaintiff. Accordingly, it requested that the court render judgment in favor of the plaintiff in the amount of $5924, which represented the difference between the arbitration award in the amount of $105,924, and the $100,000 policy limit that the tortfeasor's insurer had already paid the plaintiff.

[2] The parties filed a joint statement of material facts that are not in dispute, which the court incorporated in full into its memorandum of decision.

[3] In the present case, Universal invokes collateral estoppel defensively. Thus, no further discussion of privity is warranted. See *Marques* v. *Allstate Ins. Co.*, 140 Conn. App. 335, 341 n.5, 58 A.3d 393 (2013).

[4] Our Supreme Court has identified particular circumstances in which an arbitration decision is not afforded preclusive effect; however, this case does not involve any such circumstances. See *Marques* v. *Allstate Ins. Co.*, supra, 140 Conn. App. 340 n.4.

[5] The plaintiff devotes much of his briefing to his argument that it is inequitable for a defendant insurer to have the option to choose when to invoke collateral estoppel because the plaintiff does not acquire such a choice and cannot assert collateral estoppel offensively. As our appellate courts have previously noted, the " 'crowning consideration' in collateral estoppel cases . . . [is] that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of collateral estoppel is not inequitable." *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 818, 695 A.2d 1010 (1997); id. (concluding that trial court improperly invoked doctrine of collateral estoppel against defendant insurer where defendant insurer was not in privity with tortfeasor's insurer and explaining that "[a] trial in which one party contests a claim against another should be held to estop a third person only when it is realistic to say that the third person was fully protected in the first trial"). Where a plaintiff has fully and fairly litigated an issue in a prior proceeding, the mere fact that the defendant insurer in a second action, who was neither a party to nor in privity with a party to the first action, may elect to invoke collateral estoppel does not render the doctrine's application unfair. See *Murphy* v. *Metropolitan Property & Casualty Ins. Co.*, Superior Court, judicial district of Middlesex, Docket No. CV-07-5003333 (June 30, 2009) (*Burgdorff, J.*) (48 Conn. L. Rptr. 179).

[6] The plaintiff claims that because he has exhausted the limits of Nilson's policy, he may pursue his contractual right to underinsured motorist benefits. He claims that Universal "asserts the doctrine of collateral estoppel to, in effect, rewrite the parties' contract," and further claims that Universal "has

not asserted any defense to the action sounding in the contract." The plaintiff's contentions do not prevent the application of collateral estoppel in the present case. We note that our Supreme Court has recognized the "hybrid nature of underinsured motorist coverage"; *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 26 n.9, 699 A.2d 964 (1997); and stated that "underinsured motorist benefits are sui generis. They are contractual, but they depend on principles of tort liability and damages." Id., 24. Moreover, as the trial court observed in its memorandum of decision, "the fact that a contract is the basis for an action does not exempt it from application of collateral estoppel." See *Pollansky* v. *Pollansky*, supra, 162 Conn. App. 649–54.

[7] The plaintiff further claims that collateral estoppel should not apply because "neither party to the arbitration intended it to be binding beyond the policy limit of $100,000." He claims that because the arbitrator's decision was not enforceable, it is not a final decision, and therefore cannot bar further action. We disagree. Collateral estoppel "precludes a party from relitigating *issues* and *facts* actually and necessarily determined in an earlier proceeding . . . ." (Emphasis added; internal quotation marks omitted.) *Doran* v. *First Connecticut Capital, LLC*, supra, 143 Conn. App. 321. The issue determined in the earlier arbitration was the amount of damages the plaintiff sustained as a result of Nilson's negligence, which the plaintiff concedes is the measure of damages in the present case. The plaintiff's and Nilson's agreement to confidential high-low parameters, which was not known to the arbitrator, does not disturb the arbitrator's finding on the issue of the "fair, just and reasonable damages" the plaintiff was entitled to "for those injuries he sustained through the negligence" of Nilson.

[8] The plaintiff does not address the Superior Court decisions relied on by the trial court in its memorandum of decision and by Universal in its briefing on appeal. The plaintiff cites only two cases, both from other jurisdictions, in support of his position that collateral estoppel does not apply under the present circumstances. In *Detroit Automobile Inter-Ins. Exchange* v. *Kurak*, 81 Mich. App. 217, 218–19, 265 N.W.2d 86 (1978), the Michigan Court of Appeals held that when an insured is covered by more than one insurance policy and recovers an award in arbitration within the limits of one policy, he may still demand arbitration under the other policies for the same claim, provided that he is compensated only once for any damage suffered. *Kurak* involved "stacking" of insurance policies, as the insured in that case had coverage under two contracts of insurance. Id., 219. "Stacking" is prohibited in Connecticut. See General Statutes § 38a-336 (d); *Stott* v. *Peerless Ins. Co.*, 137 Conn. App. 373, 379, 47 A.3d 965 (2012). *Kurak* is further distinguishable in that the court concluded that collateral estoppel did not apply because the mutuality requirement had not been met. Id., 220 n.4. Under Connecticut law, however, mutuality of parties is not required to invoke collateral estoppel. *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 300.

In the second case cited by the plaintiff, *State Farm Mutual Automobile Ins. Co.* v. *Amirpanahi*, 50 Wn. App. 869, 872, 751 P.2d 329, cert. denied, 111 Wn. 2d 1012 (1988), the injured party entered into arbitration with the tortfeasor and the tortfeasor's insurer. The arbitration agreement contained a restriction capping the arbitrator's authority to award damages at $50,000, and the arbitrator exceeded his authority and entered an award for $64,763.42. Id., 871. The court concluded that the issues were not clearly identical, and stated that "[t]he arbitration did not determine [the injured parties'] total damages because of the limitation in the submission" to the arbitrator. Id., 872. The court explained that an issue may be relitigated "where there are differences in the quality or extensiveness of the procedures followed in the two forums or where there are differences in the allocation of jurisdiction between them." Id., 872–73. The court also considered its holding to be in accordance with *Kurak*; id., 873; despite *Kurak*'s having involved an injured party's insurance coverage under multiple policies rather than a claim for underinsured motorist benefits. We find neither *Kurak* nor *Amirpanahi* persuasive.

[9] In light of this conclusion, we need not address Universal's contention that permitting the plaintiff to recover insurance benefits in this action would constitute an impermissible double recovery.