******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TORRINGTON TAX COLLECTOR, LLC
## *v.* HOLLY RILEY
### (AC 46294)

Cradle, Seeley and Westbrook, Js.

*Syllabus*

The plaintiff, an entity that collected taxes for the city of Torrington, appealed to this court from the judgment of the trial court granting the defendant's claim for an exemption from execution. In 2020, the plaintiff served a bank execution to secure funds from the defendant's bank account to collect on personal property taxes assessed against a business with which the defendant formerly had been involved. Although the defendant had previously provided the plaintiff with her address in California, the plaintiff did not send a tax bill or a personal written demand to the defendant at that address, as required pursuant to statute (§ 12-155 (a)). In 2021, the trial court granted the defendant's claim for an exemption from execution, concluding that the plaintiff had failed to comply with the § 12-155 (a) requirement to send notice of the tax debt to the defendant's last known address and that the bank execution was not properly issued because the plaintiff had failed to provide notice of the underlying tax bill to the defendant. The plaintiff appealed from that judgment to this court but later withdrew the appeal, abandoning any claim of error with respect to that decision. In 2022, the plaintiff mailed a personal demand to the defendant's California address and issued a new execution against her bank account to recover the same personal property taxes that it had attempted to recover with the 2020 execution. The plaintiff did not send a tax bill to the defendant's California address in connection with the new execution. Thereafter, the defendant initiated the current exemption proceedings, arguing that the 2022 execution was precluded by the trial court's 2021 order granting her prior claim for an exemption from execution. The trial court granted the defendant's 2022 claim for an exemption from execution. *Held*:

1. The trial court properly concluded that the plaintiff was precluded from collecting on the tax pursuant to the doctrine of collateral estoppel: the issue of whether the plaintiff could execute on the defendant's funds without first sending a tax bill to her California address was actually and necessarily decided in the prior exemption proceeding, even though it was not strictly essential to the final judgment of that action, because the issue was raised in the pleadings, the trial court heard testimony regarding the issue, the court specifically found that the tax bill had not been sent and relied in part on that finding in granting the defendant's exemption from execution, and the court treated the issue as essential and gave it thorough consideration; moreover, the issue was identical to the issue before the trial court in the present action, as the plaintiff

failed to send the defendant a tax bill at her California address before issuing the 2022 execution.

2. The trial court did not improperly fail to hold an evidentiary hearing on the defendant's exemption claim: the court held a hearing in which each party was given an opportunity to argue their position, and that hearing was sufficient to satisfy the requirements of the applicable statute ((Supp. 2022) § 52-367b).

Argued February 8—officially released June 18, 2024

*Procedural History*

Application seeking a claim of exemption from a financial institution execution to satisfy outstanding personal property taxes, brought to the Superior Court in the judicial district of Litchfield, where the court, *Lynch, J.*, granted the defendant's claim for an exemption from execution, and the plaintiff appealed to this court. *Affirmed.*

*Matthew L. Studer*, for the appellant (plaintiff).

*Clifford S. Thier*, for the appellee (defendant).

*Opinion*

WESTBROOK, J. The plaintiff, Torrington Tax Collector, LLC, appeals from the judgment of the trial court granting the defendant, Holly Riley,[1] an exemption from a bank execution on an account held by the defendant. See General Statutes (Supp. 2022) § 52-367b.[2] On appeal,

[1] Following the commencement of this action, Holly Riley legally changed her name to Holly Alcorn.

[2] General Statutes (Supp. 2022) § 52-367b provides in relevant part: "(a) Execution may be granted pursuant to this section against any debts due from any financial institution to a judgment debtor who is a natural person, except to the extent such debts are protected from execution . . . .

* * *

"(e) To prevent the financial institution from paying the serving officer, as provided in subsection (h) of this section, the judgment debtor shall give notice of a claim of exemption by delivering to the financial institution, by mail or other means, the exemption claim form or other written notice that an exemption is being claimed . . . .

"(f) (1) Upon receipt of an exemption claim form . . . the clerk of the court shall enter the appearance of the judgment debtor . . . with the address set forth in the exemption claim form . . . . The clerk shall forthwith send file-stamped copies of the exemption claim form . . . to the

the plaintiff claims that the court improperly (1) determined that the plaintiff's opposition to the claim of exemption was barred by the doctrine of res judicata and/or collateral estoppel, and (2) failed to hold an evidentiary hearing before granting the defendant's claim for exemption from execution. We disagree and, accordingly, affirm the judgment of the court.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff is attempting to collect personal property taxes assessed against the defendant by the city of Torrington (city). In 2002, the defendant and Raymond Robertson filed a trade name certificate with the city's town clerk indicating that they were doing business together as Robertson Precision (business), with a business address of 177 South Main Street, #18, Torrington. The defendant left the business in 2007, and, in 2011, she moved to California. By 2013, Robertson had transferred or sold the assets of the business, and the business was no longer in operation.

The city assessed personal property taxes against the business for the grand lists of 2008 through 2016. Neither the defendant nor Robertson paid the assessed taxes; nor did they challenge the assessment of the taxes. In 2011 and 2016, the plaintiff served bank executions on the defendant's accounts, securing funds and applying them to the personal property taxes the city alleged were owed relative to the business.[3] In both

judgment creditor and judgment debtor with a notice stating that the disputed funds are being held for forty-five days from the date the exemption claim form . . . was received by the financial institution or until a court order is entered regarding the disposition of the funds, whichever occurs earlier, and the clerk shall promptly schedule the matter for a hearing. . . ."

Hereinafter, unless otherwise indicated, all references to § 52-367b are to the version of that statute in the 2022 supplement to the General Statutes.

[3] The secured funds, however, were insufficient to cover the taxes assessed, and therefore, tax was still owed relative to the business at the time of the 2020 and 2022 executions.

2011 and 2016, the defendant informed the plaintiff that she had never received notice of a tax bill or the execution. The 2011 and 2016 executions are not at issue in this appeal. The defendant provided the plaintiff with her new California address and informed the plaintiff that she was no longer involved in the business.

In 2020, the plaintiff again served a bank execution (2020 execution) to secure funds from the defendant's account pursuant to a levy under General Statutes § 12-155[4] to collect on the remaining personal property taxes assessed against the business for the grand lists of 2008 through 2016. The plaintiff did not send a personal written demand to the defendant at her last known address, namely, her California address. The defendant thereafter filed a claim for an exemption from execution, arguing that, despite previously having given the plaintiff her California address, she never received a personal demand as required by § 12-155 (a). Additionally, she argued that she never received a tax bill at her current address.

The court, *Shaban, J.*, held a hearing on the defendant's claim for an exemption from execution, as required by § 52-367b. At the hearing, the plaintiff

[4] General Statutes § 12-155 provides in relevant part: "(a) If any person fails to pay any tax . . . within thirty days after the due date, the collector or the collector's duly appointed agent shall make personal demand of such person therefor or leave written demand at such person's usual place of abode or deposit in some post office a written demand for such tax . . . postage prepaid, addressed to such person at such person's last-known place of residence . . . . If such person is a corporation, limited partnership or other legal entity, such written demand may be sent to any person upon whom process may be served to initiate a civil action against such corporation, limited partnership or entity.

"(b) After demand has been made in the manner provided in subsection (a) of this section, the collector for the municipality, alone or jointly with the collector of any other municipality owed taxes by such person, may (1) levy for any unpaid tax . . . on any goods and chattels of such person and post and sell goods and chattels in the manner provided in case of executions . . . ."

argued that the scope of the proceeding was limited and that the court could not consider whether the tax bill was received, but that, regardless, the plaintiff followed the proper procedure in sending the tax bill to the business address on file, rather than to the defendant's California address. The defendant countered that the exemption should be granted because she had informed the plaintiff of her California address in 2011 but had never received a tax bill at that address. The defendant presented the testimony of the plaintiff's agent, Launa M. Goslee, and testified herself at the hearing.

Following the hearing, the court, *Shaban, J.*, issued an order (2021 order) granting the defendant an exemption on the grounds that the plaintiff had not complied with the personal demand requirement of § 12-155 (a) and that the defendant had never received a tax bill. Specifically, the court concluded: "[T]he [plaintiff] failed to comply with the statutory requirement to send notice of the tax debt to [the defendant's] usual place of abode and/or her last known address. The [plaintiff] had been given that information personally by [the defendant] years before the tax bill, the tax warrant and the bank execution were issued. In that [the defendant] *did not properly receive the tax bill, she lost any ability to challenge the assessment or the billing itself* before a tax bill or warrant was issued. Having not properly provided notice of the *underlying tax bill* to [the defendant], the bank execution upon which it was based, as well as the tax warrant that was issued, also were not properly issued." (Emphasis added.) The court granted the defendant's claim for an exemption from execution and ordered that the funds subject to execution be returned to the defendant's bank account.

The plaintiff filed an appeal with this court challenging Judge Shaban's order. It also filed a motion for articulation with the trial court, which the court denied. In that prior appeal, the plaintiff argued that it was not

clear whether the court had granted the exemption on the ground that the *tax bill* was not sent to the defendant's California address. The plaintiff argued that the sole issue before the court "was whether the funds claimed by the plaintiff were exempt from execution . . . . The trial court, however, exceeded the limited scope of review in bank execution cases. As drafted, there is some ambiguity as to whether the trial court's holding implicates the collectability or validity of the underlying personal property taxes as opposed to simply determining the exempt or nonexempt status of the claimed funds. The court appears to hold that the defendant was denied the opportunity to challenge the assessment of the personal property taxes due to the fact that she never received a tax bill, thus rendering the present, and arguably any future, tax warrant and bank execution invalid. If, in fact, this is the trial court's position then it runs contrary to established law and confuses the timeline and procedure for challenging the assessment of municipal taxes." (Citation omitted.) The plaintiff, however, later withdrew the appeal, thereby abandoning any claim of error with respect to Judge Shaban's decision. See *Peck* v. *Statewide Grievance Committee*, 198 Conn. App. 233, 240, 232 A.3d 1279 (2020) (plaintiff failed to timely appeal and expressly waived right to appeal and "could not circumvent this failure by attempting to seek the same relief he could have claimed had he properly and timely appealed").

Rather than pursue its appellate remedy, the plaintiff instead mailed a personal demand to the defendant's California address and, thereafter, issued a new execution (2022 execution) against the defendant's bank account. The plaintiff did not send a tax bill to the defendant's California address. The defendant initiated the current exemption proceedings, arguing that the 2022 execution was precluded by the 2021 order. In a letter to her bank, which was attached to her claim

form, the defendant argued that she "won the court case on the last lien in December of 2021 and the funds were returned to our account.[5] [The plaintiff] chose to cancel [the] appeal [and] therefore should not have been legally allowed to again place a lien on my account without any notification to me and following the appeal process. [The plaintiff] forfeited [its] right to do this again." (Footnote added.)

The trial court, *Lynch, J.*, ordered the parties to brief the issue "as to why Judge Shaban's [2021] order is not res judicata on whether the plaintiff can execute on the defendant's funds without sending a new tax bill to the [defendant].

\* \* \*

"It appears to the court that Judge Shaban's ruling . . . is res judicata as to whether this court should again grant the defendant's motion for exemption." (Citation omitted.) The plaintiff, in its responsive brief, presented a similar argument to the one it had made on direct appeal from the 2021 order. The plaintiff argued that res judicata does not bar the present action because Judge Shaban's order finding that the tax bill had not been sent and the court's grant of the exemption based on this finding "exceeded the scope of the court's review and is nonbinding. . . . [C]onsideration of the assessment of the taxes and/or the ability of the defendant to challenge the assessment was improper.

\* \* \*

"In the court's 2021 [order], Judge Shaban stated [in dictum], '[i]n that the defendant did not properly receive the tax bill, she lost any ability to challenge the assessment or the billing itself before a tax bill or warrant was issued.' . . . The court's statement confuses the

---

[5] The execution secured funds from a bank account shared by the defendant and her husband.

issue as well as the timeline associated with challenging the assessment of a municipal tax. Moreover, and most importantly, the statement is incorrect as a matter of law." (Citations omitted.) The defendant in her brief countered that the present execution was barred by res judicata and/or collateral estoppel because the parties already litigated, and the 2021 order conclusively provided, that the plaintiff may not execute on the defendant's assets without notice of the tax bill. She argued that the court in the prior action took up the issue of whether the tax bill was sent and granted the exemption from execution in part because it concluded that the plaintiff had never sent a tax bill to the defendant's California address and, thus, deprived her of the ability to challenge the assessment.

After a hearing on the defendant's exemption claim, the court agreed with the defendant that res judicata and/or collateral estoppel barred the present execution because the court in the prior action had granted the exemption from execution in part due to its conclusion that the plaintiff had not sent the tax bill. The court held that "Judge Shaban's order regarding the city's failure to send the underlying tax bill to [the defendant] was not dictum but rather was an essential part of the court's decision. There is no other reasonable way to read Judge Shaban's order. Indeed, this court finds that the city's attempt to execute on the same tax debt is a collateral attack on Judge Shaban's previous decision and [is] barred by the doctrine of res judicata/collateral estoppel." The court reasoned that "[t]he only way the court could deny [the defendant's] exemption in this case would be to ignore the part of Judge Shaban's order [quoted in the preceding paragraph] . . . . The [plaintiff] asks this court to do just that and ignore that part of Judge Shaban's ruling, arguing that it was wrong. It is not for one Superior Court to rule upon the propriety of another Superior Court judge's opinion. To the

extent the [plaintiff] believed Judge Shaban's ruling was wrong, the [plaintiff] should have pursued its appeal rather than withdraw it. Ignoring the court's ruling in the previous case, issuing another bank execution and asking this court to reject Judge Shaban's analysis is not permitted under the doctrines of res judicata and collateral estoppel." (Citation omitted.) The court therefore granted the defendant's claim for an exemption from execution. This appeal followed.

The plaintiff claims on appeal that the court improperly (1) concluded that the plaintiff's most recent attempt to collect on the remainder of the outstanding tax was barred by the doctrines of res judicata and/or collateral estoppel, and (2) failed to hold an evidentiary hearing on the defendant's exemption claim pursuant to § 52-367b. The defendant counters that the 2021 order should be given preclusive effect under the doctrine of collateral estoppel. She argues that the issue of whether the plaintiff may execute on her funds without first sending her a *tax bill* already had been litigated and decided in the prior action and that the present action is therefore barred. The defendant additionally argues that an evidentiary hearing was not required and that, regardless, the plaintiff's evidentiary hearing claim was waived because it was raised for the first time on appeal. For the following reasons, we reject the plaintiff's claims.

I

We first address whether the present claim is barred by the doctrine of res judicata and/or collateral estoppel. We agree with the defendant that the issue of whether the plaintiff may execute on the defendant's funds without first sending her a tax bill was decided in the 2021 order, which directly implicates the doctrine

of collateral estoppel.[6] Although the plaintiff argues that collateral estoppel does not bar the present action because whether the tax bill was received was not a proper consideration when evaluating a claimed exemption from execution,[7] that is inconsequential in the present action because, "[u]nder the doctrines of res judicata and collateral estoppel, a later court cannot alter the results of a prior final judgment *even if that judgment is wrong* . . . ."[8] (Emphasis added; internal quotation marks omitted.) *Bruno* v. *Geller*, 136 Conn. App. 707, 727, 46 A.3d 974, cert. denied, 306 Conn. 905, 52 A.3d 732 (2012). Having decided to abandon its challenge to the soundness of the 2021 order by way of the direct appeal, the plaintiff is not permitted to challenge the prior order as erroneous in the present action if the

[6] In light of our conclusion that the plaintiff is precluded under the doctrine of collateral estoppel from relitigating the issue of whether the plaintiff may execute on the defendant's funds without first sending her a tax bill in the present action, we do not consider whether the plaintiff's claims are barred under the doctrine of res judicata. See *Weiss* v. *Weiss*, 297 Conn. 446, 472 n.20, 998 A.2d 766 (2010).

[7] "Both the plain language of § 52-367b and our case law . . . make clear that the only cognizable exemptions are those provided for by that statute. Section 52-367b (a) plainly and unambiguously states that the judgment debtor is only permitted to assert exemptions set forth by statute or 'any other laws or regulations of this state or of the United States which exempt such debts from execution.' . . . General Statutes (Supp. 2022) § 52-367b (a)." (Emphasis omitted.) *Clark* v. *Quantitative Strategies Group, LLC*, 224 Conn. App. 224, 233, 311 A.3d 732 (2024).

[8] Even if "the judgment in the first action was manifestly erroneous . . . [it would] not render it invalid or ineffective. Though erroneous, it continue[s] in force [unless] set aside by writ of error or appeal, or other proper proceedings, and the Superior Court in deciding the second action ha[s] no power to decide that the first judgment was erroneous. . . . Unless, and until, it is corrected, modified, reversed, annulled, vacated, or set aside on appeal or in some other timely and appropriate proceeding, a final judgment on the merits which has been rendered by a court having jurisdiction of the parties and the subject matter, and which is not void, is conclusive as to matters put in issue and actually determined in the suit, when they come into controversy again in subsequent litigation between the same parties or their privies, even though it is irregular or erroneous." (Citation omitted; internal quotation marks omitted.) *Bruno* v. *Geller*, 136 Conn. App. 707, 726–27, 46 A.3d 974, cert. denied, 306 Conn. 905, 52 A.3d 732 (2012).

requirements for the application of collateral estoppel have been met. We accordingly consider only whether the prior court's conclusion that the plaintiff could not execute on the defendant's funds without sending her a tax bill bars the relitigation of that issue in the present action under the doctrine of collateral estoppel, given that the plaintiff has again sought to execute on the defendant's funds without sending a tax bill to her California address.

A brief review of the processes of tax assessment and tax collection will aid our discussion. Pursuant to General Statutes § 12-71, "goods, chattels and effects or any interest therein . . . belonging to any person who is a resident in this state, shall be listed for purposes of property tax in the town where such person resides, subject to the provisions of sections 12-41, 12-43 and 12-59." Every person required by law to file personal property taxes must file an annual declaration of their tangible personal property pursuant to General Statutes § 12-41 on or before the first day of November each year. General Statutes § 12-41 (f). After the declarations are filed,[9] the assessors or board of assessors release the grand list for their respective town.[10] General Statutes § 12-55 (a).

[9] If a person required to file a declaration fails to do so, the assessor or a majority of the board of assessors will notify the person in writing within sixty days of the expiration of the time to file such declaration to "appear before them to be examined under oath as to such person's property liable to taxation and for the purpose of verifying a declaration made out by them under the provisions of section 12-41. Any person who wilfully neglects or refuses to appear before the assessors and make oath as to such person's taxable property within ten days after having been so notified or who, having appeared, refuses to answer shall be fined not more than one thousand dollars. The assessors shall promptly notify the proper prosecuting officers of any violation of any provision of this section. . . ." General Statutes § 12-54.

[10] General Statutes § 12-55 (a) provides in relevant part: "On or before the thirty-first day of January of each year, except as otherwise specifically provided by law, the assessors or board of assessors shall publish the grand list for their respective towns. Each grand list shall contain the assessed values of all property in the town, reflecting the statutory exemption or

The town then "shall make out and sign rate bills containing the proportion which each individual is to pay according to the assessment list; and any judge of the Superior Court or any justice of the peace, on their application or that of their successors in office, shall issue a warrant for the collection of any sums due on such rate bills. Each collector shall mail or hand to each individual from whom taxes are due a bill for the amount of taxes for which such individual is liable." General Statutes § 12-130 (a).

A personal property tax assessment may then be challenged in several ways. "It is well settled that, if the owner of the [property] at the [time] of the [assessment] in question . . . want[s] to challenge the [assessment], [he or she is] required to follow the appropriate statutory procedures, either by (1) timely appealing from the [assessment] to the city's board of assessment appeals pursuant to General Statutes §§ 12-111 and 12-112, and from there by timely appealing to the trial court pursuant to General Statutes § 12-117a, or (2) timely bringing a direct action pursuant to . . . [General Statutes] § 12-119."[11] (Internal quotation marks omitted.) *Cornelius* v. *Arnold*, 168 Conn. App. 703, 710, 147 A.3d 729 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1245 (2017). Under § 12-117a, a person claiming to be aggrieved by an action relating to the assessment of taxes has two months

exemptions to which each property or property owner is entitled, and including, where applicable, any assessment penalty added in accordance with section 12-41 or 12-57a for the assessment year commencing on the October first immediately preceding. The assessor or board of assessors shall lodge the grand list for public inspection, in the office of the assessor on or before said thirty-first day of January, or on or before the day otherwise specifically provided by law for the completion of such grand list. . . ."

[11] We note that, although §§ 12-117a and 12-119 reference only real property taxes, rather than personal property taxes, these statutory procedures have been applied to challenge both real and personal property taxes. See *Cooley Chevrolet Co.* v. *West Haven*, 146 Conn. 165, 166, 148 A.2d 327 (1959); *Wiele* v. *Board of Assessment Appeals*, 119 Conn. App. 544, 546–47, 988 A.2d 889 (2010).

from the date of the mailing of the notice of such action to file an appeal from the board of tax review or the board of assessment appeals. General Statutes § 12-117a (a) (1). Under § 12-119, an application for relief to the Superior Court "may be made within one year from the date as of which the property was last evaluated for purposes of taxation . . . ." General Statutes § 12-119.

We now turn to the process of tax collection. If any person fails to pay a duly assessed tax, the tax collector, pursuant to § 12-155 (a), must send a personal demand to the tax debtor's usual place of abode within thirty days of the due date.[12] After making a personal demand pursuant to § 12-155 (a), a tax collector may levy for the unpaid taxes with interest, penalties and charges of the municipality upon the goods, chattels, or real estate of the taxpayer, demand payment from any bank indebted to the taxpayer or garnish the wages due from the taxpayer's employer for the amount owed the municipality. See General Statutes § 12-162 (b) (1).

To collect on a tax debt, the tax collector may file an execution on the tax debtor's financial institution. To do so, the tax collector must make an application requesting the execution to the clerk of the court. General Statutes (Supp. 2022) § 52-367b (b). If such application is properly filed in accordance with § 52-367b, the clerk shall issue the execution with directions for the officer serving the execution to make demand upon the financial institution. General Statutes (Supp. 2022) § 52-367b (b). To prevent the financial institution from paying pursuant to the execution, the debtor must provide notice of a claim of exemption to the financial institution. General Statutes (Supp. 2022) § 52-367b (e). Upon receipt of the exemption form, the clerk of the court

---

[12] See footnote 4 of this opinion.

must enter the appearance of the debtor and send copies of the exemption claim to the creditor and the debtor with a notice stating that the funds are to be held for forty-five days or until a court order regarding the disposition of the funds.[13] General Statutes (Supp. 2022) § 52-367b (f) (1). The clerk must thereafter schedule a hearing on the exemption matter. General Statutes (Supp. 2022) § 52-367b (f) (1).

We next set forth our standard of review and other relevant legal principles. "[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . .

"Additionally, [a]pplication of the doctrine of collateral estoppel is neither statutorily nor constitutionally mandated. The doctrine, rather, is *a judicially created rule of reason that is enforced on public policy grounds.* . . . Accordingly, as we have observed in regard to the doctrine of res judicata, the decision whether to apply the doctrine of collateral estoppel in any particular case should be made based upon a consideration of the doctrine's underlying policies, namely . . . (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." (Citation omitted; emphasis added; internal quotation marks omitted.) *Wilmington Trust, National Assn.* v. *N'Guessan,* 214 Conn. App. 229, 237, 279 A.3d 310 (2022). Whether a plaintiff's claim

[13] See footnote 2 of this opinion.

is "barred by the [doctrine] of collateral estoppel . . . presents a question of law, over which our review is plenary." *Solon* v. *Slater*, 345 Conn. 794, 809, 287 A.3d 574 (2023).

Turning to the present case, we address whether the first requirement of collateral estoppel, namely, that the issue be " 'actually litigated' " in the prior action, is satisfied. *Lyon* v. *Jones*, 291 Conn. 384, 406, 968 A.2d 416 (2009). Whether the plaintiff properly could execute on the defendant's funds without sending her a tax bill was an issue distinctly raised and litigated in the prior exemption proceeding and submitted to the court for determination. For the purposes of applying the doctrine of collateral estoppel, "[a]n issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." (Internal quotation marks omitted.) Id., citing 1 Restatement (Second), Judgments § 27, comment (d), p. 255 (1982).

The plaintiff argues that whether the tax bill was received was not actually litigated in the prior action because that question was not a proper consideration in an exemption from execution action. See *Clark* v. *Quantitative Strategies Group, LLC*, 224 Conn. App. 224, 233, 311 A.3d 732 (2024). This argument rests on the assumption that an issue cannot be actually litigated for the purposes of collateral estoppel if it is not properly a matter before the court. Although our law, which echoes the Restatement (Second) of Judgments, states that an issue is actually litigated only if it is "properly raised"; 1 Restatement (Second), supra, § 27, comment (d), p. 255; we conclude, guided by our review of the Restatement and its application by our courts and the courts of other states, that an issue need only be raised in the proper pleadings, actually argued before the court

and in fact determined in order to be considered properly raised and, accordingly, actually litigated for the purposes of collateral estoppel.

In the present case, the tax bill issue was properly raised in the prior exemption action because it was raised in the pleadings. See *Doyle* v. *Universal Underwriters Ins. Co.*, 179 Conn. App. 9, 17, 20, 178 A.3d 445 (2017) (concluding that "issue of the plaintiff's damages was plainly raised in the pleadings" and, therefore, issue was properly raised for purposes of collateral estoppel). Specifically, in the letter attached to the defendant's exemption form, the defendant raised as a basis for her claim of exemption that she had never received the tax bill and had no notice of the execution until the funds were seized from her accounts.[14] The court heard testimony from both the defendant and Goslee regarding what documents were sent and received, including that the plaintiff sent the tax bill to the business address on file and not to the defendant's California address. The court, on the basis of the evidence adduced at the hearing, made the following factual findings in its memorandum of decision: "[The plaintiff] failed to comply with the statutory requirement to send notice of the tax debt to [the defendant's] usual place of abode and/or her last known address. The city had been given that information personally by [the defendant] years before the tax bill, the tax warrant and the bank execution were issued. In that [the defendant] did not properly receive the tax bill, she lost any ability to challenge the assessment or the billing itself before a tax bill or warrant

---

[14] The letter stated in relevant part: "We've never received a single bill from them, nor is this my company as I left it in 2007.

\* \* \*

"[W]ithout warning [or] forethought to communicate, as the tax department and assessor's office had my phone number and address . . . [t]hey took $33,352.06 from our bank account. . . . [The plaintiff] mailed the documents to a home on Franklin [S]treet in Torrington, not to our address in California which [it] had [and] which denies me due process to settle this matter personally."

was issued. Having not properly provided notice of the underlying tax bill to [the defendant], the bank execution upon which it was based, as well as the tax warrant that was issued, also were not properly issued." The court therefore specifically found that the tax bill was not sent and relied in part on this finding in granting the defendant's exemption from execution. We therefore conclude that whether the plaintiff may execute on the defendant's funds without first sending a tax bill to her California address was actually litigated.

Moreover, the determination that the tax bill was not received was necessarily determined in the prior case. "An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Internal quotation marks omitted.) *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 344, 15 A.3d 601 (2011); see also *Lyon* v. *Jones*, supra, 291 Conn. 406 (citing to F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19, p. 624, for principle that "[a]n issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered" (emphasis omitted; internal quotation marks omitted)). Although the plaintiff argues that the court's determination regarding the tax bill was not essential to the prior court's judgment and, accordingly, was dicta, we disagree.

"If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made.

In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation." 1 Restatement (Second), supra, § 27, comment (h), p. 258. Dictum "includes those discussions that are merely passing commentary . . . those that go beyond the facts at issue . . . and those that are unnecessary to the holding in the case. . . . [I]t is not [dictum however] when a court . . . intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy . . . . Rather, such action constitutes an act of the court [that] it will thereafter recognize as a binding decision." (Internal quotation marks omitted.) *Kelly Services, Inc.* v. *Senior Network, Inc.*, 338 Conn. 794, 803, 259 A.3d 1172 (2021).

Connecticut courts have not extensively discussed when an issue is necessarily determined for the purposes of collateral estoppel. We nevertheless find the discussion of the necessarily determined requirement by the Massachusetts Supreme Court in *Home Owners Federal Savings & Loan Assn.* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455, 238 N.E.2d 55 (1968), modifying the rule of *Cambria* v. *Jeffery*, 307 Mass. 49, 50, 29 N.E.2d 555 (1940), persuasive. Although, for the foregoing reasons, we adopt the *Home Owners Federal Savings & Loan Assn.* rule, rather than the more limited rule stated in *Cambria*, it is important to first discuss the *Cambria* case.

In the first action at issue in *Cambria*, the plaintiff, Ernest Jeffery, sought relief for personal injury caused by the negligence of the servant of the defendant, John E. Cambria, following a car accident. *Cambria* v. *Jeffery*, supra, 307 Mass. 49. The court in the first action, however, concluded that Jeffery was contributorily negligent. Id. Because, at the time, contributory negligence was a complete bar to recovery in a negligence action,

this finding made obsolete the consideration of the neg-ligence of Cambria's servant. See id., 50. The court nevertheless went on to explicitly find that Cambria's servant was negligent as well. Id., 49. Cambria then brought an action alleging that Jeffery's negligence caused damage to his car. Id., 50. The Supreme Court concluded that "[a] fact merely found in a case becomes adjudicated only when it is shown to have been a basis of the relief, denial of relief, or other ultimate right established by the judgment." Id. Because the finding of negligence with respect to Cambria's servant was unnecessary to conclude that contributory negligence barred the prior negligence action, the Supreme Court concluded that the issue of negligence with respect to Cambria's servant was not binding in the subsequent action. Id.

The Massachusetts Supreme Court, however, later recognized a narrow exception to the rule it had stated in *Cambria*. In *Home Owners Federal Savings & Loan Assn.* v. *Northwestern Fire & Marine Ins. Co.*, supra, 354 Mass. 455, the court "expand[ed] the applicability of the doctrine [of collateral estoppel] to encompass certain findings not strictly essential to the final judg-ment in the prior action. . . . Such findings may be relied upon [for purposes of collateral estoppel] if it is clear that the issues underlying them were treated as essential to the prior case by the court and the party to be bound. Stated another way, it is necessary that such findings be the product of full litigation and careful decision. . . . This limited expansion of the class of findings within the ambit of the doctrine of collateral estoppel does no violence to the policies underlying the rule of the *Cambria* case . . . . See [F. James & G. Hazard, Civil Procedure (2d Ed. 1965) § 11.25, p. 583]. We deem this limited extension of the rule warranted in view of the strong and oft-stated public policy of

limiting each litigant to one opportunity to try his case on the merits." (Citations omitted.)

In the present case, the plaintiff argues that, because the issue of receipt of the underlying tax bill was not a proper consideration in an exemption action, it was unnecessary to the conclusion in the prior action and, therefore, not necessarily decided. We are persuaded, however, that the aforementioned rule adopted by the Supreme Court of Massachusetts is consistent with how Connecticut courts have generally applied collateral estoppel.

Collateral estoppel is intended to limit a litigant to only one opportunity to argue his case on the merits. "[T]he decision whether to apply the doctrine of collateral estoppel in any particular case should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." (Internal quotation marks omitted.) *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, supra, 300 Conn. 344.

Guided by these public policies, and our Supreme Court's recognition that when a court "intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy . . . such action constitutes an act of the court [that] it will thereafter recognize as a binding decision"; (internal quotation marks omitted) *Kelly Services, Inc.* v. *Senior Network, Inc.*, supra, 338 Conn. 803; we find

persuasive and adopt the rule of *Home Owners Federal Savings & Loan Assn.* v. *Northwestern Fire & Marine Ins. Co.*, supra, 354 Mass. 455. In the interest of bringing litigation to a close, preventing repetitive litigation, and preventing inconsistent judgments, we conclude that an issue that, although not strictly essential to the final judgment of the prior action, will nevertheless be treated as necessarily determined for collateral estoppel purposes if it is clear that the issue in question was treated as essential in the prior action by both the court and the party to be bound by collateral estoppel. For this limited rule to apply, it is necessary that the finding on the issue be fully litigated and be the product of a careful decision by the prior court in order to protect the competing interest of the bound party's vindication of a just claim. If these considerations are satisfied, we are persuaded that, to prevent the frustration of the policies underlying the doctrine of collateral estoppel, an issue, although not strictly necessary to the prior judgment, will nevertheless be considered necessarily determined for the application of collateral estoppel.

In the present case, the prior court's discussion of whether the tax bill was received was not merely passing commentary. Rather, it was presented to the court by the defendant as a basis for granting her an exemption, it was discussed in the hearing before the court, and the court intentionally addressed it in its 2021 order. See *Kelly Services, Inc.* v. *Senior Network, Inc.*, supra, 338 Conn. 803. The plaintiff had an opportunity to litigate before the court, and did litigate, whether the tax bill properly was noticed and received by the defendant. The court discussed in its order whether the tax bill was sent by the plaintiff and to what address it was sent, and ultimately came to the conclusion that the defendant's request for an exemption from execution should be granted in part due to the fact that the defendant never received the tax bill at her California

address. The court concluded that the tax bill was not received and expressly relied on this conclusion in granting the defendant's exemption from execution.[15] Although this issue may not have been strictly necessary to the prior court's judgment because there was an additional ground on which Judge Shaban sustained the defendant's exemption claim, we nevertheless conclude that, because the issue of whether the tax bill was received was treated as essential by the court, and because this issue was fully litigated and given thorough consideration, the court's determination that the plaintiff could not execute on the defendant's funds without sending her a tax bill was necessarily determined in the 2021 order.

We accordingly conclude that the issue of whether the plaintiff could execute on the defendant's bank account without first sending a tax bill was actually and necessarily decided in the prior action and is identical to the issue before the court in the present action. Because the 2021 order decided that the plaintiff may not execute on the defendant's funds without first sending her a tax bill and, thereby, affording her the right to challenge the tax assessment, and the plaintiff failed to send the defendant a tax bill at her California address before the present execution, the court in the present action properly concluded that the plaintiff is precluded from collecting on the tax.

II

The plaintiff next argues that the court improperly failed to hold an evidentiary hearing on the exemption claim pursuant to § 52-367b prior to granting the defendant's claim for an exemption. The defendant counters that an evidentiary hearing is not required to determine

---

[15] The court reasoned that, "[i]n that [the defendant] did not properly receive the tax bill, she lost any ability to challenge the assessment or the billing itself before a tax bill or warrant was issued."

whether to grant an exemption on the grounds of res judicata and/or collateral estoppel and that the plaintiff has waived this argument because the plaintiff failed to request an evidentiary hearing before the trial court. We agree with the defendant that the court did not err in declining to hold an evidentiary hearing.

Even assuming, arguendo, that the plaintiff properly requested an evidentiary hearing before the court, we nevertheless conclude that the court did not err in failing to hold an evidentiary hearing before granting the defendant's exemption from execution on the grounds of res judicata and/or collateral estoppel. "Section 52-367b governs the execution against debts due from banks. Once a judgment debtor claims an exemption from execution pursuant to § 52-367b (e), the court must schedule a short calendar hearing on the exemption claim. The exemption claim filed by the debtor is considered prima facie evidence that the claimed exemption exists. General Statutes [Rev. to 1989] § 52-367b (f). The court, after conducting this hearing, must decide whether the exemption claim is meritorious; General Statues [Rev. to 1989] § 52-367b (i); and, if so, whether all or only part of the money deposited in the subject account is exempt. General Statutes [Rev. to 1989] § 52-367b (j)." (Footnote omitted.) *People's Bank* v. *Perkins*, 22 Conn. App. 260, 262–63, 576 A.2d 1313, cert. denied, 216 Conn. 813, 580 A.2d 58 (1990).

The plaintiff relies on *People's Bank* v. *Perkins*, supra, 22 Conn. App. 263–64, to argue that "[w]hether an exemption claim is meritorious presents a question of fact. The determination of such a factual issue requires the taking of evidence . . . not merely the presentation of legal argument by the parties or their counsel." (Internal quotation marks omitted.) Although it is true that this court stated in *Perkins* that, when a court has before it a disputed issue of fact, the court must take evidence, in addition to legal argument by the parties or

their counsel; id.; whether res judicata and/or collateral estoppel applies is a question of law, not fact. *Twenty-Four Merrill Street Condominium Assn.*, *Inc.* v. *Murray*, 96 Conn. App. 616, 619, 902 A.2d 24 (2006) (whether doctrine of res judicata applies to facts of case is question of law). Accordingly, *Perkins* is inapplicable in the present case.

The court additionally did not deny the plaintiff's request to present evidence but, rather, delayed its decision on whether to hold an evidentiary hearing until it had resolved the issue of law of whether res judicata and/or collateral estoppel barred the present action.[16] The court was bound only to hold a hearing in accordance with § 52-367b. The court, *Lynch, J.*, held a hearing in this case in which each party was given an opportunity to argue their position. This hearing was sufficient to satisfy the requirements of § 52-367b. We therefore conclude that the court did not err in failing to hold an evidentiary hearing before granting the defendant's motion for an exemption from execution.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[16] Specifically, the court stated: "I'm going to order that the bank extend holding the funds. I'm also going to order both parties within two weeks to provide a written brief to the court about why res judicata should not apply with regard to Judge Shaban's order from December 22, 2021. And then, depending upon the court's ruling on that regard, if I feel it's necessary to hear testimony on this issue from [the plaintiff] or the defendant, I will schedule it for a hearing."