******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TORRINGTON TAX COLLECTOR, LLC *v.* HOLLY RILEY
## (SC 21048)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Dannehy and Bright, Js.

### *Syllabus*

The plaintiff, the municipal tax collector for the city of Torrington, commenced a bank execution action against the defendant in 2021, seeking to levy funds from the defendant's bank accounts and to apply those funds toward the tax debt of a business in which she previously had been involved. The trial court in the 2021 action, however, granted the defendant's motion for exemption, concluding that the plaintiff's bank execution action was "of no effect" because the defendant, who had moved to California at least ten years earlier, had not received notice of or an opportunity to challenge the tax debt at issue, and also because the plaintiff had failed to comply with the statutory (§ 12-155 (a)) requirement that it make written demand of the plaintiff at her usual place of abode or last known place of residence. The plaintiff appealed from the court's decision to grant the motion but later withdrew its appeal. The plaintiff then sent written demand to the defendant at her California address and commenced the present bank execution action, but it never provided the defendant with a new tax bill or an opportunity to challenge that bill. The defendant again moved for exemption, which the trial court granted and rendered judgment for the defendant, reasoning that the present action was a collateral attack on the court's previous decision in the 2021 action and was therefore barred by, inter alia, the doctrine of collateral estoppel. The Appellate Court affirmed the trial court's judgment, concluding that the doctrine of collateral estoppel barred the plaintiff from relitigating the issue of whether it could execute on the defendant's funds without first providing adequate notice and an opportunity to challenge because that issue was actually litigated and necessarily determined in the 2021 action. On the granting of certification, the plaintiff appealed to this court, claiming, inter alia, that the doctrine of collateral estoppel did not bar the present action because the issue of whether the defendant's funds were exempt from execution due to the lack of notice and opportunity to challenge was not necessary to the judgment in the 2021 action in light of the trial court's independent, alternative ground for granting the motion for exemption, namely, the plaintiff's failure to comply with § 12-155 (a). *Held*:

The Appellate Court correctly concluded that the plaintiff's present bank execution action was barred by the doctrine of collateral estoppel, and, accordingly, this court affirmed the Appellate Court's judgment.

The issue of whether the defendant's funds were exempt from execution due to her lack of notice and opportunity to challenge the underlying tax debt was actually litigated in the 2021 action, insofar as the defendant raised a due process claim in her pleadings and that issue was addressed at an evidentiary hearing and adjudicated by the trial court in its memorandum of decision in the 2021 action.

There was no merit to the plaintiff's claim that the due process issue was not actually litigated in the 2021 action on the ground that a trial court in a bank execution action does not possess jurisdiction to consider the underlying assessment or validity of the tax, as the Superior Court, as a court of general jurisdiction, has subject matter jurisdiction to grant a taxpayer relief from the collection of a municipal tax that violates due process of law.

The issue of whether the defendant's funds were exempt from execution due to her lack of notice and opportunity to challenge was necessarily determined in the 2021 action, even though there was an additional independent, alternative ground for the court's judgment in the 2021 action.

This court continued to follow the approach espoused in comment (n) to § 68 of the Restatement (First) of Judgments, pursuant to which all independent, alternative grounds supporting a judgment are deemed to be necessary to that judgment and are precluded from being litigated in a subsequent action for purposes of the doctrine of collateral estoppel.

Because independent, alternative grounds are entitled to preclusive effect in a subsequent action, the issue of the defendant's notice and opportunity to challenge the underlying tax debt, which was actually litigated by the parties and adjudicated by the trial court in the 2021 action, was necessarily decided for purposes of the doctrine of collateral estoppel and could not be relitigated in the present action, despite the court's independent, alternative ground for its judgment, namely, the plaintiff's failure to comply with the written demand requirement of § 12-155 (a).

This court declined the plaintiff's invitation to adopt, as a matter of public policy, an exception to the application of the doctrine of collateral estoppel in bank execution actions involving municipal tax collections.

Argued September 19, 2025—officially released February 3, 2026

*Procedural History*

Application seeking a claim of exemption from a financial institution execution to satisfy outstanding personal property taxes, brought to the Superior Court in the

judicial district of Litchfield, where the court, *Lynch, J.*, granted the defendant's claim for an exemption from execution, and the plaintiff appealed to the Appellate Court, *Cradle*, *Seeley* and *Westbrook*, *Js.*, which affirmed the trial court's decision, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed*.

*Matthew L. Studer*, with whom, on the brief, was *Mario F. Coppola*, for the appellant (plaintiff).

*Clifford S. Thier*, for the appellee (defendant).

*Opinion*

ECKER, J. The plaintiff, Torrington Tax Collector, LLC,[1] appeals from the judgment of the Appellate Court upholding the trial court's determination that the present bank execution action is barred by the doctrine of collateral estoppel due to a previous, unsuccessful bank execution action initiated by the plaintiff against the same taxpayer to collect the same tax debt. *Torrington Tax Collector, LLC* v. *Riley*, 226 Conn. App. 211, 212–13, 232, 318 A.3d 267 (2024). The plaintiff claims that collateral estoppel does not apply because the validity of the underlying tax debt on which the plaintiff seeks to execute was not actually litigated or necessarily determined in the prior action. Alternatively, the plaintiff contends that we should recognize an exception to collateral estoppel in municipal tax collection actions. We affirm the judgment of the Appellate Court.

I

BACKGROUND

The following facts and procedural history are relevant to this appeal. In 2002, Raymond Robertson and

---

[1] Torrington Tax Collector, LLC, is the municipal tax collector for the city of Torrington.

the defendant, Holly Riley,[2] filed a trade name certificate with the town clerk of the city of Torrington (city), indicating that they were doing business as Robertson Precision (business) at 177 South Main Street, #18, Torrington. The city assessed personal property taxes against the business for the grand lists of 2008 through 2016. Neither Robertson nor the defendant paid the full amount of the taxes; nor did either of them challenge the tax assessment or the subsequent tax bill.

In 2021, the plaintiff commenced a bank execution action against the defendant to recover the business' past due personal property taxes (2021 action).[3] In the 2021 action, the plaintiff sought to levy a total of $33,352.06 in funds from two bank accounts the defendant held jointly with her husband. See General Statutes §§ 12-162 and 52-367b.[4] The defendant, who had moved to California at least one decade earlier, learned of the execution after the bank had seized the funds from her accounts. The defendant then submitted an exemption claim form in which she claimed that the funds were exempt from execution because, among other reasons, she was not provided with due process or served with a personal or writ

---

[2] During the course of these proceedings, Holly Riley changed her name to Holly Alcorn.

[3] We take judicial notice of the pleadings, documents, and transcript filed in the trial court and the Appellate Court in the 2021 action. See *Torrington Tax Collector, LLC* v. *Riley*, Connecticut Appellate Court, Docket No. AC 45201 (appeal withdrawn August 1, 2022); *Torrington Tax Collector, LLC* v. *Holly*, Superior Court, judicial district of Litchfield, Docket No. LLI-CV-21-5013388-S (February 11, 2021); see, e.g., *State* v. *King*, 350 Conn. 303, 330 n.15, 324 A.3d 81 (2024) ("[t]here is no question . . . concerning our power to take judicial notice of files of the Superior Court, whether the file is from the case at bar or otherwise" (internal quotation marks omitted)). See generally *Drabik* v. *East Lyme*, 234 Conn. 390, 398, 662 A.2d 118 (1995) ("[j]udicial notice may . . . be taken at any stage of the proceedings including on appeal" (internal quotation marks omitted)).

[4] Sections 12-162 and 52-367b were subsequently the subject of certain amendments. See, e.g., Public Acts 2023, No. 23-23, §§ 1 and 5. Those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revisions of the statutes.

ten demand for payment prior to the commencement of the bank execution action. See General Statutes § 12-155 (a).[5]

The trial court, *Shaban, J.*,[6] held an evidentiary hearing on the defendant's exemption claim. At that proceeding, counsel for the plaintiff argued that the defendant's challenge to the validity of the underlying tax debt was improper because "there are other procedural mechanisms for challenging the assessment of a tax," such as an action against the city under General Statutes §§ 12-117a and 12-119. The plaintiff's counsel contended that the plaintiff was "not the proper party" to adjudicate the validity or amount of a tax assessment or a tax bill and that a bank execution action was not "the proper proceeding" in which to do so. Counsel clearly articulated the plaintiff's position that the sole issue for Judge Shaban to decide was "whether the funds in the account . . . are exempt . . . in accordance with one of the statutory exemptions." See General Statutes § 52-367b (a).

After hearing testimony from both the defendant and Launa M. Goslee, the city's tax collector,[7] and finding credible the testimony of both witnesses, Judge Shaban found the following facts. The defendant left the business by 2007, and, by 2013, "the assets of the business

[5] General Statutes § 12-155 (a) provides: "If any person fails to pay any tax, or fails to pay any water or sanitation charges within thirty days after the due date, the collector or the collector's duly appointed agent *shall make personal demand of such person therefor or leave written demand at such person's usual place of abode* or deposit in some post office a written demand for such tax or such water or sanitation charges, postage prepaid, addressed to such person at such person's last-known place of residence unless, after making reasonable efforts, the assessor is unable to identify the owner or persons responsible. If such person is a corporation, limited partnership or other legal entity, such written demand may be sent to any person upon whom process may be served to initiate a civil action against such corporation, limited partnership or entity." (Emphasis added.)

[6] To avoid confusion between the 2021 action and the present action, we hereinafter refer by name to Judge Shaban, who was the trial judge in the 2021 action.

[7] Goslee testified that she was an employee of the plaintiff and that she "ha[d] been appointed by the city . . . as [its] tax collector" in 2015.

were sold or transferred by Robertson to another, and the business was no longer in operation." There was a prior bank execution action in 2011, pursuant to which the plaintiff secured funds from the defendant's bank account and applied those funds to the business' tax debt. As a result, the defendant "physically went to the [plaintiff's] office and advised [the plaintiff] that she had never received a tax bill and was no longer a part of the [business]. However, no documentation was ever filed with the city by Robertson to that effect. By that time in 2011, [the defendant] had moved to California, and she provided the [plaintiff] with her California address."

In 2016, the plaintiff began a second bank execution action against the defendant, pursuant to which it "secured $2212.50 from one of [the defendant's] accounts and applied the funds to back personal property taxes the city claimed [were] due relative to the business." The defendant "contacted the city again, indicating that, despite . . . having provided the [plaintiff] with her California address and phone contact information in 2011, she had never received any notice of a bill for the taxes or [notice] that any execution would be issued. She was then told by the [plaintiff's] office that no further action would be taken against her since the business was now closed."

Five years later, the plaintiff commenced a third bank execution action against the defendant, the 2021 action. Although the plaintiff "had the information as to [the defendant's] usual place of abode and her last known place of residence for years . . . no written demand was made [on] her at her usual place of abode," as §12-155 (a) requires; nor was the defendant ever provided with any notice of the tax warrant, tax bill, or tax assessment at her California address. Judge Shaban determined that the plaintiff had "failed to comply with the statutory requirement to send notice of the tax debt to [the defendant's] usual place of abode and/or her last known address. The city had been given that information personally by [the defendant] years before the tax bill, the tax

warrant and the bank execution were issued. [Because] she did not properly receive the tax bill, she lost any ability to challenge the assessment or the billing itself before a tax bill or warrant was issued. [The plaintiff not having] properly provided notice of the underlying tax bill to [the defendant], the bank execution [on] which it was based, as well as the tax warrant that was issued, also were not properly issued." Judge Shaban therefore granted the defendant's motion for exemption and deemed the bank execution action "to be of no effect."

The plaintiff appealed to the Appellate Court and sought a stay of the release of the seized funds to the defendant pending the outcome of the appeal, arguing that "[t]here are significant legal issues in dispute, [e.g.], whether the trial court impermissibly exceeded the limited scope of review in a statutory execution exemption case." The plaintiff also moved for articulation, asking Judge Shaban to clarify the legal basis for his decision on the ground that it was unclear whether Judge Shaban had ruled "that the underlying personal property taxes, assessed between 2008 and 2016, are either invalid or uncollectible as against the defendant . . . due to the fact that the individual tax bills were mailed to the business address on file with the town clerk and the assessor, as opposed to [the defendant's] personal address." The trial court granted the motion to stay but denied the motion for articulation.[8]

Rather than pursue its appeal, the plaintiff chose to withdraw it and make another attempt to execute on the defendant's funds after sending the defendant a written demand at her usual place of abode in California pursuant to §12-155 (a). The plaintiff did not, however, provide

---

[8] The plaintiff filed with the Appellate Court a motion for review of Judge Shaban's denial of its motion for articulation, arguing that Judge Shaban's order leaves "some ambiguity as to whether [his] holding implicates the collectability or validity of the underlying personal property taxes—as opposed to simply determining the exempt or nonexempt status of the claimed funds." The Appellate Court granted the motion for review but denied the plaintiff's request to order Judge Shaban to articulate further the basis for his decision.

the defendant with a new tax bill or an opportunity to challenge the tax bill or the assessment on which it was based. Having fulfilled the written demand requirement, the plaintiff again issued a tax warrant and initiated a fourth bank execution action against the defendant, which is the action at issue in this appeal. In the present action, the plaintiff seeks to levy $9298.29 in funds in the defendant's jointly held bank account and to apply those funds toward the tax debt of the business.[9] The defendant filed a motion for exemption, claiming that the tax bill was "not [her] responsibility" and that the plaintiff had "forfeited [its] right to do this again" by withdrawing its appeal from Judge Shaban's ruling on the motion for exemption in the 2021 action.

The trial court, *Lynch, J.*, held that the present action was "a collateral attack on Judge Shaban's previous decision and [was] barred by the doctrine of res judicata/ collateral estoppel," reasoning that "the operative tax warrant and execution are based on the same tax bill that was the subject of the prior motion for exemption. As the prior tax bill was held to be improperly noticed, rendering the prior warrant and execution invalid, the plaintiff is collaterally estopped from asserting the validity of any warrant or execution based on the same tax bill."[10] The Appellate Court upheld the decision of the trial court. See *Torrington Tax Collector, LLC* v. *Riley*, supra, 226 Conn. App. 213, 234. It concluded that the plaintiff was precluded from relitigating "the issue of whether the plaintiff may execute on the defendant's funds without first sending her a tax bill" because that issue was actually litigated and necessarily determined in the 2021 action. Id., 219; see id., 232. We granted certification to determine whether "the Appellate Court correctly conclude[d] that the plaintiff was collaterally estopped

---

[9] According to the tax warrant, as of November 30, 2022, the amount due inclusive of taxes, interest, and fees was $48,249.34.

[10] Although the trial court did not distinguish between the related but distinct doctrines of res judicata and collateral estoppel, the essence of its conclusion was clear: Judge Shaban's prior decision was a final adjudication of the relevant issues that was entitled to preclusive effect.

from executing on the defendant's funds to satisfy an unpaid personal property tax assessment based on a prior judgment granting an exemption from execution on the same tax debt . . . ." *Torrington Tax Collector, LLC* v. *Riley*, 350 Conn. 909, 323 A.3d 1093 (2024).

The plaintiff claims that collateral estoppel does not bar the present action because the issue of the defendant's receipt of, and opportunity to challenge, the tax bill was not actually litigated or necessarily determined in the 2021 action.[11] According to the plaintiff, the issue was not actually litigated in the 2021 action because Judge Shaban lacked jurisdiction to consider the validity of the underlying tax debt and the sole matter for decision in that action was whether the funds in the defendant's accounts were exempt from execution under one or more of the statutory exemptions prescribed by General Statutes § 52-352b. The plaintiff also contends that the issue was not necessarily decided in the 2021 action because Judge Shaban's judgment rested on an independent, alternative ground, namely, the plaintiff's failure to leave the defendant a written demand as required by § 12-155 (a). Additionally, the plaintiff argues that, even if the issue regarding the validity of the underlying tax debt was actually litigated and necessarily decided in the 2021 action, the public policy in favor of municipal tax collection weighs in favor of recognizing an exception to collateral estoppel in this case. We disagree with all three of the plaintiff's arguments.

## II

## COLLATERAL ESTOPPEL

Collateral estoppel, also known as issue preclusion, "embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . .

---

[11] It is undisputed that, because the plaintiff complied with the written demand requirement of § 12-155 (a) prior to commencing the present bank execution action, collateral estoppel bars the present action only to the extent that the issue of the defendant's notice and opportunity to challenge the underlying tax debt was actually litigated and necessarily determined in the 2021 action.

Collateral estoppel means simply that when an issue of ultimate fact [or law] has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 58, 808 A.2d 1107 (2002). For collateral estoppel to apply, the issue "must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Internal quotation marks omitted.) *Solon* v. *Slater*, 345 Conn. 794, 810–11, 287 A.3d 574 (2023). These are "question[s] of law, over which our review is plenary." Id., 809.

## A

### Actually Litigated

We first address whether the issue of the defendant's notice and opportunity to challenge the tax bills reflecting the underlying tax debt was actually litigated in the 2021 action. "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." (Internal quotation marks omitted.) Id., 811. To determine what issues were actually litigated in the prior action, a reviewing court must examine the pleadings filed, the legal arguments presented, the evidence submitted, and the decision rendered. "In cases tried to a judge, express findings of fact and conclusions of law often show clearly what has been—and what has not been—decided." 18 C. Wright et al., Federal Practice and Procedure (2d Ed. 2002) § 4420, p. 510.

Our review of the record in the 2021 action reveals that the issue of the defendant's lack of notice and opportunity to challenge the underlying tax bill was raised in the pleadings, addressed during the evidentiary hearing, and expressly adjudicated by Judge Shaban in his written

memorandum of decision. The defendant's motion for exemption alleged that the funds in her bank accounts were exempt from execution because, among other reasons, the plaintiff had "cleaned out" the accounts "without proper due process." The defendant claimed that she had "never received a single bill" for the underlying tax debt, even though she had provided the plaintiff with her California address in 2011 and again in 2016. According to the defendant, the levy on $33,352.06 in funds from her bank accounts "without warning [or] forethought to communicate . . . denie[d] [her] due process to settle this matter personally."

At the evidentiary hearing, the defendant testified that she had left the business in 2007, notified the plaintiff in 2011 that she was no longer a part of the business, and provided the plaintiff with her current address in California in 2016. The defendant also testified that the business and its equipment had been sold sometime after 2012 and that, since then, "there was no business at all . . . ." Goslee, the city's tax collector, testified that, "[a]ccording to the history on the account, the tax bills" were not sent to the defendant at her California address; instead, they were sent "to the mailing address of the property, which was listed on the trade name certificate." She explained that it is the plaintiff's "protocol . . . to mail notices or tax bills to the last known address that has been supplied by the assessor's office" and that the tax bills mailed to the business "never came back" as undeliverable, so the plaintiff "would not have known that [the defendant] was not receiving the bills, because they were never sent back . . . with a bad address."

The plaintiff argued before Judge Shaban that the defendant could not challenge the validity of the underlying tax debt on due process grounds in a bank execution action, and Judge Shaban implicitly yet unmistakably rejected this argument in his memorandum of decision. Judge Shaban found, in pertinent part, that the defendant "did not properly receive the tax bill" and "lost any ability to challenge the assessment or the billing itself

before a tax bill or warrant was issued. [*The plaintiff not having*] *properly provided notice of the underlying tax bill to* [*the defendant*]*, the bank execution* [*on*] *which it was based, as well as the tax warrant that was issued, also were not properly issued*." (Emphasis added.) Judge Shaban therefore "deem[ed] the execution to be of no effect" and granted the defendant's motion for a tax exemption. Because the defendant's due process claim was raised in the pleadings, addressed at the evidentiary hearing, and adjudicated by Judge Shaban, we conclude that it was actually litigated in the 2021 action.

The plaintiff contends that, even if the issue was in fact presented and decided in the 2021 action, it was not actually litigated for purposes of collateral estoppel because, "[i]n a bank execution exemption matter, the trial court does not possess jurisdiction to consider the underlying assessment or validity of a tax." See, e.*g.*, *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 740 n.8, 183 A.3d 611 (2018) ("no preclusive effect can attach when the prior tribunal lacked jurisdiction to consider the relevant issues"). However, the plaintiff never explains why Judge Shaban lacked subject matter jurisdiction to adjudicate the issue. The plaintiff argues only that an exemption proceeding under §52-367b(a)[12] is the wrong procedural vehicle by which to challenge the amount or validity of a previously assessed tax, and contends that the defendant was required to initiate a different proceeding (an action under §12-119) against a different party (the city) to invalidate the underlying tax debt on due process grounds. We reject the plaintiff's claim

---

[12] Section 52-367b (a) provides: "Execution may be granted pursuant to this section against any debts due from any financial institution to a judgment debtor who is an individual, except to the extent such debts are protected from execution by sections 52-352a, 52-352b, 52-352c of the general statutes, revision of 1958, revised to 1983, 52-354 of the general statutes, revision of 1958, revised to 1983, 52-361 of the general statutes, revision of 1958, revised to 1983 and section 52-361a, *as well as by any other laws or regulations of this state or of the United States which exempt such debts from execution*." (Emphasis added.)

because it confuses a trial court's statutory authority with its subject matter jurisdiction.

As we previously have explained, "[s]ubject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 463, 239 A.3d 272 (2020). In other words, there is a distinction between a trial court's "*jurisdiction* and . . . the correctness of a decision made by a tribunal in the course of its *exercise of its jurisdiction*." (Emphasis in original.) Id., 464. The plaintiff's argument fails to observe this distinction.

Assuming, without deciding, that Judge Shaban lacked statutory authority under § 52-367b (a) to grant a tax exemption on the ground that the defendant was deprived of due process in connection with the underlying tax debt, we note that the plaintiff cites no authority, and we have found none, indicating that Judge Shaban lacked subject matter jurisdiction to adjudicate the due process issue. To the contrary, our research reveals that the Superior Court, as a court of general jurisdiction, has subject matter jurisdiction to grant a taxpayer relief from an assessed municipal tax if the collection of that tax "would constitute the taking of . . . property without due process of law . . . ." *Wilcox* v. *Madison*, 106 Conn. 223, 224, 137

A. 742 (1927), appeal dismissed, 276 U.S. 606, 48 S. Ct. 337, 72 L. Ed. 728 (1928); see id., 227 (trial courts have jurisdiction to grant equitable relief from collection of illegal or void tax if there is "some recognized ground for general equitable relief, as when the taxpayer is threatened with irreparable injury and has no adequate remedy at law"); *New London* v. *Perkins*, 87 Conn. 229, 234, 87 A. 724 (1913) (taxpayer's failure to challenge allegedly illegal or void tax does not bar relief from execution unless requisite "notice was given," otherwise taxpayer would be "deprive[d] . . . of its day in court, to which it is entitled"). See generally *State* v. *Butler*, 348 Conn. 51, 67, 300 A.3d 1145 (2023) ("our trial courts are courts of general jurisdiction," and, "[i]n the absence of statutory or constitutional provisions, the limits of [their] jurisdiction are delineated by the common law" (internal quotation marks omitted)). As the Appellate Court correctly observed, collateral estoppel bars a later court from "alter[ing] the results of a prior final judgment *even if that judgment* [*was*] *wrong*" due to alleged procedural or other nonjurisdictional irregularities. (Emphasis in original; internal quotation marks omitted.) *Torrington Tax Collector, LLC* v. *Riley*, supra, 226 Conn. App. 220; see also part II C of this opinion; cf. *Schoenhorn* v. *Moss*, 347 Conn. 501, 516, 298 A.3d 236 (2023) ("[a]n error in applying [the] rules of practice or statutory procedures is not even arguably jurisdictional and does not affect a trial court's competency to adjudicate the type of action before it"); *Monroe* v. *Monroe*, 177 Conn. 173, 185, 413 A.2d 819 (final judgment rendered by state referee was not subject to collateral attack in subsequent action, despite alleged statutory and procedural irregularities, because referee had jurisdiction and "competence to entertain the action before [the referee]"), appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). We therefore conclude that the issue of whether the defendant's funds are exempt from execution due to the defendant's lack of

notice and opportunity to challenge the underlying tax bill was actually litigated and decided in the 2021 action.

## B

## Necessarily Determined

The plaintiff next claims that the issue of the defendant's notice and opportunity to challenge the underlying tax bill was not necessarily determined in the 2021 action because the judgment rested on an independent, alternative ground: the plaintiff's failure to provide the defendant with a written or personal demand in accordance with § 12-155 (a). Because the lack of a written or personal demand, standing alone, was dispositive of the defendant's exemption claim, the plaintiff contends that Judge Shaban's alternative determination with respect to the underlying tax bill "was nonbinding dict[um]." The defendant responds that Judge Shaban's resolution of the validity of the underlying tax bill was not nonbinding dictum but, instead, a ruling of the court entitled to preclusive effect.

Even when an issue is actually litigated and decided in a prior action, collateral estoppel does not apply unless the trial court's adjudication of that issue was "necessary to the judgment." (Internal quotation marks omitted.) *O'Sullivan* v. *Haught*, 348 Conn. 625, 634, 309 A.3d 1194 (2024). As a general principle, we have stated that an issue is necessary to the judgment "if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action." (Internal quotation marks omitted.) *Solon* v. *Slater,* supra, 345 Conn. 811. "Findings on nonessential issues usually have the characteristics of dicta." (Internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 406, 968 A.2d 416 (2009). These general principles, however, are of little assistance in a

case like the present one, in which the court's holding rests on independent, alternative grounds.

This appeal presents a legal issue not previously addressed by this court: if a trial court renders a judgment resting on alternative grounds, and the losing party fails to pursue an appeal from that judgment, are the alternative grounds "necessary to the judgment" for the purpose of collateral estoppel? After all, if ground A is independently sufficient to support the judgment, then logic dictates that ground B was not necessary, and, likewise, if ground B is independently sufficient to support the judgment, then ground A was not necessary. Under this reasoning, collateral estoppel does not apply to *either* ground on which the trial court's judgment rested, even though *both* grounds were actually litigated by the parties and finally decided by the tribunal in the first action. On the other hand, many observers consider it counterintuitive to conclude that a judgment is not preclusive when it is supported on multiple grounds rather than just a single ground. These conflicting perspectives have led commentators to observe that the question of the preclusive effect to be afforded independent, alternative grounds "is a close and difficult one . . . ." 1 Restatement (Second), Judgments § 27, reporter's note to comment (i), p. 270 (1982) (Second Restatement). The issue has vexed legal scholars and resulted in a split of authority among both federal and state courts.

Comment (n) to § 68 of the Restatement (First) of Judgments (First Restatement) resolved this issue in favor of the view that both grounds are precluded. "[When] the judgment is based [on] the matters litigated as alternative grounds," states the comment, "the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment. Thus, if the defendant interposes two defenses on each of which issue is taken, and both of the issues are [resolved] in favor of the defendant, a judgment for the defendant is not based on one of the issues more than on the other; and it must be said either that both are material to the judgment or

that neither is material. It seems obvious that it should not be held that neither is material, and hence both should be held to be material." Restatement (First), Judgments §68, comment (n), pp. 307–308 (1942).[13]

The Second Restatement reversed course. Comment (i) to the general rule governing issue preclusion provides that, "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." 1 Restatement (Second), supra, §27, comment (i), p. 259. This commentary acknowledges that there are arguments in favor of affording preclusive effect "to both issues [as the First Restatement does]. The matter has presumably been fully litigated and fairly decided; the determination does support, and is in itself sufficient to support, the judgment for the prevailing party; and the losing party is in a position to seek reversal of the determination from an appellate court. Moreover,

[13] Different principles apply to judgments that have been the subject of an appeal. Under both the First and Second Restatements, if an appellate court affirms the trial court's judgment solely on one of the independent, alternative grounds, then the other ground is not entitled to preclusive effect in a subsequent action. See Restatement (First), supra, §68, comment (n), p. 308 ("[when] the trial court bases the judgment [on] two alternative grounds, and an appellate court affirms the judgment solely on one of the grounds, the judgment is not conclusive in a subsequent action in which the other ground is in issue"); 1 Restatement (Second), supra, §27, comment (o), p. 263 ("[i]f the appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination"). If, however, the appellate court affirms the trial court's judgment on both independent, alternative grounds, then both grounds are entitled to preclusive effect. See Restatement (First), supra, §69, comment (b), p. 316 ("[i]f the judgment of the court of first instance was based [on] two alternative grounds, either of which would be sufficient to support the judgment, and the appellate court holds that both of these grounds are sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both grounds in a subsequent action on a different cause of action"); 1 Restatement (Second), supra, §27, comment (o), p. 263 (same). Our analysis in this case is limited to unappealed trial court judgments resting on independent, alternative grounds.

a party who would otherwise urge several matters in support of a particular result may be deterred from doing so if a judgment resting on alternative determinations does not effectively preclude relitigation of particular issues." Id.

Nonetheless, the Second Restatement identifies three reasons in support of the position that independent, alternative grounds are akin to "nonessential determination[s]" that are not entitled to preclusive effect. Id. "First, a determination in the alternative may not have been as carefully or rigorously considered as it would have if it had been necessary to the result, and in that sense it has some of the characteristics of dict[um]. Second, and of critical importance, the losing party, although entitled to appeal from both determinations, might be dissuaded from doing so because of the likelihood that at least one of them would be upheld and the other not even reached. If he were to appeal solely for the purpose of avoiding the application of the rule of issue preclusion, then the rule might be responsible for increasing the burdens of litigation on the parties and the courts rather than lightening those burdens." Id. Third, although there may be some circumstances in which "the balance tips in favor of preclusion because of the fullness with which the issue was litigated and decided in the first action . . . it is in the interest of predictability and simplicity for the result of nonpreclusion to be uniform."[14] Id., pp. 259–60.

The divergent approaches adopted by the First and Second Restatements have spawned a split of authority

---

[14] However, the Second Restatement provides that collateral estoppel will apply if "the first action, even though decided on alternative grounds, necessarily adjudicated the issue" raised in the second action. 1 Restatement (Second), supra, § 27, comment (i), p. 260. Stated another way, if *both* independent, alternative grounds would dispose of the second action, then relitigation is barred. See id., illustration (16), p. 260; see also *Intellectual Ventures I, LLC* v. *Capital One Financial Corp.*, 937 F.3d 1359, 1375 (Fed. Cir. 2019) ("the case for applying collateral estoppel to alternative determinations is much stronger when all of the alternative determinations in the first case would be independently sufficient to dispose of the second case"); 18 C. Wright

among the federal courts of appeals and our sister states. The Second, Third, Ninth, Eleventh, and District of Columbia Circuits have rejected comment **(i)** to §27 of the Second Restatement and, instead, continue to follow the preclusion rule set forth in comment **(n)** to §68 of the First Restatement. See, e.g., *Jean Alexander Cosmetics, Inc.* v. *L'Oreal USA, Inc.*, 458 F.3d 244, 254–55 (3d Cir. 2006), cert. denied, 549 U.S. 1305, 127 S. Ct. 1878, 167 L. Ed. 2d 364 (2007); *Yamaha Corp. of America* v. *United States*, 961 F.2d 245, 255 (D.C. Cir. 1992), cert. denied, 506 U.S. 1078, 113 S. Ct. 1044, 122 L. Ed. 2d 353 (1993); *Gelb* v. *Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986), cert. denied, 480 U.S. 948, 107 S. Ct. 1608, 94 L. Ed. 2d 794 (1987); *Deweese* v. *Palm Beach*, 688 F.2d 731, 734 (11th Cir. 1982); *In re Westgate-California Corp.*, 642 F.2d 1174, 1176–77 (9th Cir. 1981). Likewise, the courts of some of our sister states have declined to follow the approach of the Second Restatement, deeming it incompatible with traditional common-law principles of collateral estoppel. See, e.g., *Dobrowski* v. *Jay Dee Contractors, Inc.*, Docket No. 288206, 2010 WL 293069, *3–4 (Mich. App. January 26, 2010), appeal denied, 488 Mich. 862, 788 N.W.2d 13 (2010); *Malloy* v. *Trombley*, 50 N.Y.2d 46, 50–52, 405 N.E.2d 213, 427 N.Y.S.2d 969 (1980); *Propst* v. *Dept. of Health & Human Services*, 234 N.C. App. 165, 169–72, 758 S.E.2d 892 (2014).

By contrast, the Fourth, Fifth, Seventh, Tenth, and Federal Circuits follow comment **(i)** to §27 of the Second Restatement, holding that neither of the alternative grounds on which an unappealed judgment rests is

et al., supra, §4421, p. 575 ("preclusion is available so long as each and any of the findings that were independently sufficient to dispose of the first action would also be independently sufficient to dispose of the second action"). This proviso does not apply to the present case because only one of the two alternative grounds on which the 2021 judgment was based (i.e., the failure to provide the defendant with notice and an opportunity to challenge the tax bill) would dispose of the plaintiff's bank execution action. As for the other ground, it is undisputed that the plaintiff fulfilled the written demand requirement of §12-155 (a) prior to commencing the present action.

entitled to preclusive effect.[15] See, e.g., *Baker* v. *Potter*, 175 Fed. Appx. 759, 761 (7th Cir. 2006); *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 328 (4th Cir. 2004); *Comair Rotron, Inc.* v. *Nippon Densan Corp.*, 49 F.3d 1535, 1538–39 (Fed. Cir. 1995); *Turney* v. *O'Toole*, 898 F.2d 1470, 1472 n.1 (10th Cir. 1990); *Hicks* v. *Quaker Oats Co.*, 662 F.2d 1158, 1168, 1170–73 (5th Cir. 1981). Additionally, some of the courts of our sister states have adopted the Second Restatement's approach as "the better rule . . . ." *Manlove* v. *Sullivan*, 108 N.M. 471, 476, 775 P.2d 237 (1989); see also *Musgrave* v. *Squaw Creek Coal Co.*, 964 N.E.2d 891, 898–99 (Ind. App.), transfer denied, 975 N.E.2d 360 (Ind. 2012); *Vanover* v. *Kansas City Life Ins. Co.*, 438 N.W.2d 524, 526 (N.D. 1989).

The United States Supreme Court has not resolved the split of authority among the circuits, but a dissenting opinion authored by Justice Samuel A. Alito, Jr., and joined by three other justices expresses the view that "[t]he First Restatement has the more compelling position."[16] *Herrera* v. *Wyoming*, 587 U.S. 329, 366, 139 S. Ct. 1686, 203 L. Ed. 2d 846 (2019) (Alito, J., dissenting). Justice Alito explained that there was "scant explanation" for the Second Restatement's "change in position beyond a reference in the [r]eporter's [n]ote to a single decision of the United States Court of Appeals for the Second Circuit," which the Second Circuit has since clarified "was 'not intended to have . . . broad impact outside the [bankruptcy] context,' and [that circuit]

---

[15] The Sixth Circuit has adopted a compromise position when "one ground for the decision is clearly primary and the other only secondary," concluding that, under such circumstances, "the secondary ground is not 'necessary to the outcome' for the purposes of issue preclusion." *National Satellite Sports, Inc.* v. *Eliadis, Inc.*, 253 F.3d 900, 910 (6th Cir. 2001), cert. denied sub nom. *Time Warner Entertainment Co., L.P.* v. *National Satellite Sports, Inc.*, 534 U.S. 1156, 122 S. Ct. 1127, 151 L. Ed. 2d 1019 (2002).

[16] The majority did not address the issue in *Herrera* because it concluded that an exception to the doctrine of collateral estoppel applied. See *Herrera* v. *Wyoming*, supra, 587 U.S. 343–44 (applying "[t]he change-in-law exception").

continues to follow the rule of the First Restatement . . . ." Id., 365 (Alito, J., dissenting), quoting *Winters* v. *Lavine*, 574 F.2d 46, 67 (2d Cir. 1978); see also *Gelb* v. *Royal Globe Ins. Co.*, supra, 798 F.2d 45 ("[t]he general rule in [the Second] Circuit is that if a court decides a case on two grounds, each is a good estoppel" (internal quotation marks omitted)).

The dissent in *Herrera* found unpersuasive the Second Restatement's "two principal objections to giving alternative grounds preclusive effect."[17] *Herrera* v. *Wyoming*, supra, 587 U.S. 366 (Alito, J., dissenting). First, the concern that a court in a prior action may not have given alternative grounds "the careful deliberation and analysis normally applied to essential issues . . . is based on an unjustified assessment of the way in which courts do their work. Even when a court bases its decision on multiple grounds, it is reasonable to expect that such a finding is the product of careful judicial reasoning." (Citation omitted; internal quotation marks omitted.) Id. Second, the dissent was "skeptical" of the idea that "the losing party may decline to appeal if one of the two bases for a judgment is strong and the other is weak," noting that such an unusual circumstance is likely to arise "in only a small subset of cases involving such judgments" and that there are "other aspects of [the issue preclusion] doctrine [that] protect against giving binding effect to decisions that result from unreliable litigation," such as the requirements that the issue be "actually and necessarily determined" in an action in which the parties had "an adequate opportunity or incentive to obtain a full

---

[17] The third ground on which the Second Restatement relies, the need for a predictable uniform rule; see 1 Restatement (Second), supra, § 27, comment (i), pp. 259–60; does not help to resolve *which* predictable uniform rule should be adopted: the First Restatement's rule, pursuant to which both alternative grounds are afforded preclusive effect, or the Second Restatement's rule, pursuant to which neither alternative ground is afforded preclusive effect. Either rule, once adopted, creates uniformity and predictability.

and fair adjudication . . . .'' (Internal quotation marks omitted.) Id.

Like the dissent in *Herrera*, as well as the courts in the Second, Third, Ninth, Eleventh, and District of Columbia Circuits, we are not persuaded that the policy rationales articulated in support of comment (i) to § 27 of the Second Restatement justify a departure from the traditional common-law principles of collateral estoppel embodied in the First Restatement.[18] Connecticut courts do not treat alternative grounds supporting a judgment as having the characteristics of dicta; nor do we presume that they were the product of less rigorous judicial reasoning. See, e.g., *Rosenthal Law Firm, LLC* v. *Cohen*, 190 Conn. App. 284, 291, 210 A.3d 579 (2019) (recognizing "a distinction between dicta and alternative holdings in an opinion"). To the contrary, we adhere to the view that, "when a court . . . intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy . . . such action constitutes an act of the court [that] it will thereafter recognize as a binding decision." (Internal quotation marks omitted.) *Kelly Services, Inc.* v. *Senior Network, Inc.*, 338 Conn. 794, 803, 259 A.3d 1172 (2021); accord

---

[18] We recognize that, in *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 727 A.2d 1245 (1999), we cited to comment (i) to § 27 of the Second Restatement with approval in support of our holding that "a general [jury] verdict is not entitled to collateral estoppel effect . . . [*when*] *there is no way to ascertain the precise basis of the jury's determination in a prior adjudication* . . . ." (Emphasis added.) Id., 377; see id., 378 (noting that "[t]he view we express[ed] in [*Dowling*] has been embraced as well in the comments to § 27 of the [Second] Restatement"). *Dowling* is distinguishable because it involved a general jury verdict, pursuant to which it was impossible to determine whether the issue sought to be precluded was resolved in favor of the prevailing party. See id., 377 ("[when] there is more than one possible reason for the jury's verdict, and the court . . . cannot say that any one is necessarily inherent in the verdict, the doctrine of collateral estoppel is inapplicable" (internal quotation marks omitted)). Unlike in the case of a general jury verdict, when a trial court issues a written memorandum of decision expressly predicating its judgment on alternative grounds, the court in a subsequent action knows exactly on what bases the trial court's judgment was rendered. Our holding in *Dowling* consequently does not assist us in resolving the present appeal.

*Voris* v. *Molinaro*, 302 Conn. 791, 797 n.6, 31 A.3d 363 (2011). Thus, when "there are two grounds, [on] either of which [a] court may rest its decision, and it adopts both, the ruling on neither is obiter [dictum], *but each is the judgment of the court, and of equal validity with the other.*" (Emphasis added; internal quotation marks omitted.) *Rosenthal Law Firm, LLC* v. *Cohen*, supra, 291–92, quoting *United States* v. *Title Ins. & Trust Co.*, 265 U.S. 472, 486, 44 S. Ct. 621, 68 L. Ed. 1110 (1924); see also *Rosenthal Law Firm, LLC* v. *Cohen*, supra, 293 ("[when] it is clear that a . . . [court] has focused on the legal issue presented by the case before it and made a deliberate decision to resolve the issue [as an alternative ground supporting the judgment], that ruling becomes the law" and is binding precedent (internal quotation marks omitted)).

Whether the approach advocated in the Second Restatement is more likely to relieve the parties and courts from the burdens of litigation may present a closer question. For two reasons, we are not persuaded that this consideration standing alone is sufficient to tip the balance in favor of a general rule of nonpreclusion. First, as the dissent in *Herrera* points out, it is anything but clear that the efficiency that the Second Restatement contemplates will come to pass if a rule of nonpreclusion were to be adopted. See *Herrera* v. *Wyoming*, supra, 587 U.S. 366 (Alito, J., dissenting) (opining that it is unlikely "that the losing party may decline to appeal if one of the two bases for a judgment is strong and the other is weak"). Not only did the losing party consider both grounds sufficiently meritorious to litigate them before the trial court and to pursue them for final determination, but the trial court concluded that it was appropriate to render judgment in the prevailing party's favor on both grounds. Under these circumstances, requiring the losing party to challenge both grounds on appeal to avoid the preclusive effect of

the trial court's judgment hardly seems as if it would encourage the filing of unnecessary appeals.[19]

Second, the Second Restatement's efficiency analysis is flawed because it considers only one side of the efficiency ledger. Even if we were to credit the notion that a rule of nonpreclusion will result in fewer appeals being taken from judgments resting on alternative grounds, any proper analysis must also contemplate the *increase* in litigation experienced by the judicial system in the form of the relitigation of issues that are no longer collaterally estopped by the prior judgment. The Second Restatement's rule allows a party, after litigating an issue once and losing that issue on multiple, alternative grounds, to bypass an appeal and to relitigate the same issue again in another action without facing the preclusive effect of collateral estoppel.[20] The rule is efficient only if the total costs associated with the reduction in appellate activity in the first adjudication outstrip the total costs associated with the increased litigation activity (trial and appellate) in subsequent relitigation of the same issue previously decided. We have found no authority suggesting that the rule of nonpreclusion is more efficient in the aggregate. Thus, even if we were to assume that the Second Restatement's rule would deter a modest number of appeals, the conservation of

[19]To avoid mootness, we require an appellant to challenge both of the alternative grounds on which a trial court judgment was based. See, e.g., *Middlebury* v. *Connecticut Siting Council*, 326 Conn. 40, 54, 161 A.3d 537 (2017); *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 379 n.23, 119 A.3d 462 (2015).

[20]We recognize that a second action may be barred by the doctrine of res judicata, also known as claim preclusion. See, e.g., *Solon* v. *Slater*, supra, 345 Conn. 810 (distinguishing between collateral estoppel and res judicata, and noting that "the doctrine of res judicata prevents a party from relitigating the *same claim* following a final judgment on the merits, regardless of what additional or different evidence or legal theories might be advanced in support of it" (emphasis in original; internal quotation marks omitted)). Although the doctrines of collateral estoppel and res judicata share a "conceptual closeness . . . the two doctrines are regarded as distinct"; (citation omitted; internal quotation marks omitted) id.; and our analysis in the present appeal is limited to the doctrine of collateral estoppel.

any appellate resources would likely be outweighed by the burdens that successive litigation would impose on the parties and our trial courts. See *Malloy* v. *Trombley*, supra, 50 N.Y.2d 51–52 (rejecting Second Restatement's approach because, among other reasons, "an appeal would be less [time-consuming] and at a less beleaguered level of our court system than would be true in consequence of [a] new trial").

As a matter of common practice, parties frequently raise multiple, alternative grounds in support of a judgment in their favor, and trial courts often take a belt-and-suspenders approach by addressing and resolving each of the alternative grounds raised. See, e.g., *Piccolo* v. *American Auto Sales, LLC*, 195 Conn. App. 486, 499, 225 A.3d 961 (2020) (describing "th[e] typical" belt-and-suspenders approach of "plead[ing] alternative counts" (internal quotation marks omitted)). In many ways, a trial court's resolution of alternative grounds increases judicial efficiency by avoiding the additional time and cost associated with a remand to the trial court to address unresolved issues in the event of reversal on appeal. See, e.g., *Barash* v. *Lembo*, 348 Conn. 264, 303–304, 303 A.3d 577 (2023) (reversing trial court's judgment and remanding case so that court could resolve alternative grounds it did not previously address); *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 381–82, 977 A.2d 650 (2009) (same); *Zahringer* v. *Zahringer*, 262 Conn. 360, 370–71, 815 A.2d 75 (2003) (same).

As the Third Circuit has observed, given the routine frequency with which litigants raise and trial courts address alternative grounds in support of a judgment, "[t]o permit or require relitigation of all alternative findings would eviscerate a great number of judicial determinations that were the products of costly litigation and careful deliberation. Indeed, under the approach of the Second Restatement, the judicial findings in nearly any complex case would be unlikely to preclude subsequent relitigation of the same issues." *Jean Alexander Cosmetics, Inc.* v. *L'Oreal USA, Inc.*, supra, 458 F.3d

255. The "speculative" interest in deterring appeals recognized in the Second Restatement is outweighed by "the systemic interest that courts and litigants have in ensuring that the identical parties receive only 'one bite at the apple' on a given issue." Id., 254. "Adopting the Second Restatement's view that preclusive effect should be denied to findings because they are stated in the alternative would significantly weaken the principle that later courts should honor the first actual decision of a matter that has been actually litigated. . . . The doctrine of collateral estoppel protects this vital interest of the judicial system." (Citation omitted; internal quotation marks omitted.) Id.

We agree with the Third Circuit and, like that court, "will follow the traditional view that independently sufficient alternative findings should be given preclusive effect." Id., 255. The traditional preclusion principles embodied in comment (n) to §68 of the First Restatement comport with our state's long history and tradition of honoring the stability and finality of judgments. See, e.g., *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 601–602, 922 A.2d 1073 (2007) (collateral estoppel results in "[s]tability in judgments [which] grants to parties and others the certainty in the management of their affairs [that] results when a controversy is finally laid to rest" (internal quotation marks omitted)); *State* v. *Ellis*, 197 Conn. 436, 467, 497 A.2d 974 (1985) ("[i]t would be a violation of the fundamental principles and purposes of collateral estoppel for this court to reexamine the identical factual situation to redetermine a matter of law that has already once been fully litigated by the same parties and finally decided" (internal quotation marks omitted)). Accordingly, we decline to adopt comment (i) to §27 of the Second Restatement. See, e.g., *Bifolck* v. *Philip Morris, Inc.*, 324 Conn. 402, 423–31, 152 A.3d 1183 (2016) (declining to adopt Restatement provision that was inconsistent with Connecticut law); *Aviles* v.

*Barnhill*, 217 Conn. App. 435, 437–38, 449–53, 289 A.3d 224 (2023) (same).

Having determined that independent, alternative grounds supporting a trial court's judgment are entitled to preclusive effect in a subsequent action, we conclude that the issue of the defendant's notice and opportunity to challenge the underlying tax debt, which was actually litigated by the parties and adjudicated by Judge Shaban in the 2021 action, was necessarily decided for the purpose of collateral estoppel. See part II A of this opinion. Accordingly, relitigation of that issue in the present action is barred, unless an exception to the doctrine of collateral estoppel applies.

C

Public Policy Exception

The plaintiff contends that, as a matter of public policy, we should recognize an exception to collateral estoppel in bank execution actions because "municipal tax collectors are not restricted to a 'single bite' at the proverbial apple when attempting to collect a duly assessed tax," and, therefore, the concerns animating the doctrine do not apply. This argument misses the mark.

Collateral estoppel is "flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, supra, 262 Conn. 59–60. "In establishing exceptions to the general application of the preclusion doctrines, we have identified several factors to consider, including: (1) whether another public policy interest outweighs the interest of finality served by the preclusion doctrines . . . (2) whether the incentive to litigate a claim or issue differs as between the two

forums . . . (3) whether the opportunity to litigate the claim or issue differs as between the two forums . . . and (4) whether the legislature has evinced an intent that the doctrine should not apply." (Citations omitted.) Id., 61.

The plaintiff focuses exclusively on the first factor, arguing that the public policy favoring the collection of duly assessed municipal taxes outweighs the public policy favoring the stability and finality of judgments. We reject this claim because it is premised on the assumption that the tax debt underlying the present bank execution action was duly assessed and noticed, which was the very issue in dispute in the first adjudication. In the 2021 action, Judge Shaban determined that the failure to send any notice regarding the tax debt to the defendant at her California address caused the defendant to "los[e] any ability to challenge the assessment or the billing itself" for the grand lists of 2008 through 2016, despite evidence, which Judge Shaban found to be credible, that, "by 2007, [the defendant had] left the business," and, "[b]y 2013, the assets of the business [had been] sold or transferred by Robertson to another and the business was no longer in operation." In light of Judge Shaban's findings of fact and conclusions of law, we cannot conclude that the public policy in favor of the collection of the underlying tax debt outweighs the public policy in favor of "bringing litigation to a close," "minimizing repetitive litigation," "prevent[ing] inconsistent judgments," or "provid[ing] repose . . . ." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, supra, 262 Conn. 59.

The plaintiff also claims that collateral estoppel should not apply because the 2021 action wrongly decided the issue subject to estoppel and because application of that doctrine will hinder future tax collection efforts in other cases by permitting "dissatisfied taxpayers to

raise untimely, collateral challenges to the assessment and taxation of their property." This claim lacks merit because the correctness of the judgment in the 2021 action is not at issue in this appeal and is irrelevant to the collateral estoppel analysis.[21] It is fundamental "that a judgment, not set aside on appeal or otherwise, is equally effective as an estoppel [on] the points decided, whether the decision [is] right or wrong . . . ." (Internal quotation marks omitted.) *Filosi* v. *Electric Boat Corp.*, 330 Conn. 231, 250, 193 A.3d 33 (2018). Courts cannot refuse "to give the first judgment preclusive effect . . . based simply on a conclusion that the first determination was patently erroneous." 1 Restatement (Second), supra, § 28, comment (j), p. 284; see also *B&B Hardware, Inc.* v. *Hargis Industries, Inc.*, 575 U.S. 138, 157, 135 S. Ct. 1293, 191 L. Ed. 2d 222 (2015) ("issue preclusion prevent[s] relitigation of wrong decisions just as much as right ones" (internal quotation marks omitted)). If the plaintiff wished to correct any perceived errors in the judgment resolving the 2021 action, it was incumbent on the plaintiff to maintain its appeal from that judgment. See, e.g., *Dish Network, LLC* v. *Commissioner of Revenue Services*, 330 Conn. 280, 295, 193 A.3d 538 (2018) ("[u]nless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings to correct perceived wrongs in the tribunal's conclusive decision" (internal quotation marks omitted)); see also part II A of this opinion. "A collateral attack on [the] judgment is a procedurally impermissible substitute

---

[21] The precedential footprint of our holding today is limited due to the idiosyncratic circumstances giving rise to this appeal, which involve the collateral estoppel effect—not the correctness—of the prior adjudication in the 2021 action. Nothing in this opinion should serve as an obstacle to the collection of municipal taxes, duly assessed in accordance with the law, in future cases that do not involve the unique features of the present matter. We express no opinion as to whether any alternative recourse is available to the plaintiff to collect the unpaid tax liabilities at issue in the present case.

for an appeal." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 771–72, 143 A.3d 578 (2016).

For the foregoing reasons, we conclude that the plaintiff's bank execution action is barred by the doctrine of collateral estoppel.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.